**In re Toni ABDUL–HASAN, Debtor.**

**Toni ABDUL–HASAN, Plaintiff,**

v.

**FIREMEN'S FUND MORTGAGE, INC.; et al., Defendants.**

Bankruptcy No. LAX 88–53340–GM.

Adv. No. LAX 88–01746–GM.

United States Bankruptcy Court, C.D. California.

Jan. 31, 1989.

Andrew Edward Smyth, Los Angeles, Cal., for plaintiff.

Michael S. Sment, Rich & Ezer, Los Angeles, Cal., for defendants.

**MEMORANDUM OF OPINION ON MOTION FOR SUMMARY JUDGMENT AND ON REQUEST TO ENTER JUDGMENT AFTER DEFAULT**

GERALDINE MUND, Bankruptcy Judge.

Trial in the above matter was set for January 20, 1989, but on January 9, 1989

defendants William Little and 2974 Properties, Inc. brought their motion for summary judgment. Fireman's Fund Mortgage, Inc. has never filed an Answer. At the hearing it was agreed by plaintiff that the Court should determine whether judgment would be entered as to Fireman's Fund after default. The Court has reviewed the moving and responding papers and hereby issues its memorandum of opinion.

The Court has reviewed the files of the Chapter 13 cases referred to in the moving papers and finds that on March 16, 1987, John Abdul–Hasan and Toni Abdul–Hasan filed a Chapter 13 petition, Case LAX 87–51429–JNB.[1] The couple stated that there was a prior Chapter 7 in which discharge had been granted in 1982. The Chapter 13 statement revealed two children and joint take-home pay of $3,700.00. The only creditor was Fireman's Fund, holder of the first deed of trust. The Chapter 13 statement showed an arrearage of 14 installments, each in the amount of $1,015.00. The debtors stated that the present market value of the residence was $95,000.00. The plan was confirmed by order entered on June 15, 1987 and required that the debtors pay $649.00 per month to the trustee for administrative expenses and arrearages, and that the debtors make their monthly maintenance payments to Fireman's Fund outside the plan.

Although the court file does not reveal the post-petition maintenance payments made through date of confirmation, it is standard practice to require the post-filing mortgage payments to be current at that time. The Court therefore assumes that as of June 11, 1987 (date of confirmation hearing), the debtors had paid Fireman's Fund the installments due for April, May and June, 1987. The debtor's status report shows that the Trustee received two and a half plan payments ($649.00 on April 24, 1987, $649.00 on May 20, 1987, and $324.50 on June 16, 1987). No payments were made to the trustee after June 16, 1987.

On November 9, 1987, Fireman's Fund filed a motion for order granting relief from the automatic stay supported by a declaration that there had been no post-petition maintenance payments received and that the post-petition delinquency was in the amount of $8,994.80. An Answer was timely filed by the debtors who admitted that no payments had been made since June, 1987 and claimed to have sufficient equity in the real property to adequately protect the creditor's interest. Hearing was held on December 9, 1987.

The motion was granted, immediately relieving the moving party from the automatic stay but preventing any foreclosure sale until at least 45 days after entry of the order. The order was entered on December 16, 1987.

Included in the order was language for "prospective relief." The order provided as follows:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Respondent(s)/Debtor(s) shall be bound by this Order in any conversion of this Bankruptcy proceeding or in any subsequently filed bankruptcy proceedings of any nature whatsoever, and as to any Automatic Stays issued relating to the interest of Secured Creditor, its assignees and/or successors in interest, and any such future Automatic Stay shall be null and void as to the interest in the property of the Secured Creditor, its assignees and/or successors in interest."

There was no appeal from this order and it became final.

1. After the hearing, but during the preparation of this Memorandum, John Abdul–Hasan came to the court, advised the Clerk that he and Toni Abdul–Hasan had been divorced prior to the filing of LAX 87–51429, and brought to the Court a certified copy of the Final Judgment of Dissolution of Marriage (Los Angeles Superior Court Case D101055) filed June 4, 1984. He also brought the Interlocutory Judgment of Dissolution which granted the Coltman Avenue property to Toni Abdul–Hassan as her separate property. He stated that he was not a party to this bankruptcy and was not aware of its filing until it showed up on his credit report. Although the Court is reporting this matter to the United States Attorney as possible bankruptcy fraud (18 U.S.C. § 3057), the facts alleged by John Abdul–Hassan are not incorporated as part of this Memorandum of Opinion and do not affect the ruling of the Court.

On April 11, 1988, the trustee moved the Court for an order dismissing the case on the ground that the debtor had defaulted on payments under the confirmed plan. That motion was granted. The final report of the trustee shows that the total amount received by her in this case was $1,622.50, the equivalent of less than three plan payments, although the case was then a year old.

On June 24, 1988, Toni Abdul–Hasan filed her second Chapter 13 petition (LAX 88–52880). This was a "face sheet filing" and was dismissed on July 18, 1988 for failure to file a statement and plan. Ms. Hassan did not reveal any prior bankruptcies. Fireman's Fund was her only creditor.

On July 22, 1988, Toni Abdul–Hasan filed the current Chapter 13 petition as a "face sheet filing." In her Local Rule 909 Statement, she did not reveal that there had been any prior bankruptcy cases. On July 26, 1988, she filed her Chapter 13 statement. She listed four dependent children, claimed a total take-home income of $2,300.00 ($1,800.00 pay and $500.00 child/spousal support), and showed Fireman's Fund as her only creditor with an arrearage of $22,500.00. She alleged that the house was worth $125,000.00 and proposed to repay the default over 60 months, claiming that a 60–month plan was necessary to fit her budget. The proof of service shows that the Chapter 13 documents were mailed to Fireman's Fund on July 22, 1988. As the day of service was prior to the preparation and filing of the Chapter 13 schedules (signed July 25 and filed July 26), the Court questions whether Fireman's Fund was ever served with the documents.

The debtor never sought to modify the prior order, reimpose a stay, or seek an injunction of stay under 11 U.S.C. § 105. The debtor never recorded notice of this bankruptcy at the County Recorder's office.

On September 1, 1988, the Trustee's sale was held under the deed of trust on the subject property. The amount of the unpaid debt together with costs was $101,-162.77. 2974 Properties, Inc., of which William Little is an officer and principal shareholder, was the successful bidder and purchased the property for the amount of $107,150.00. A trustee's deed upon sale was issued on September 16, 1988 and recorded on September 22, 1988. However, the plan was confirmed on September 6, 1988 without objection or knowledge of the foreclosure sale which had occurred on September 1, 1988.

### As to Purchasers

■ 11 U.S.C. § 549(c) states that the trustee [2] may not avoid a post-petition transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy of the petition or notice of the bankruptcy is recorded with the County Recorder. No such document was recorded and there is no evidence that William Little or 2974 Properties, Inc. (hereinafter "Purchasers") had any actual or constructive notice of the bankruptcy. Therefore the only issue left as to them is whether the price of $107,150 was "present fair equivalent value" for the property.

The Court must determine whether the language "present fair equivalent value" in § 549 is comparable to the term "reasonably equivalent value" in § 548(a)(2)(A). If so, the recent opinion of *In re Ehring*, 91 B.R. 897 (9th Cir. BAP 1988) is dispositive of the issue. In that case the court ruled that the value to be referred to is not that of the property at the time that it was foreclosed upon, but the consideration for the original deed of trust.

If it is not the intent of Congress to treat the two sections in the same manner, then the Court must find a guideline to determine whether the amount paid by the purchaser meets the "present fair equivalent

**2.** 11 U.S.C. § 1303 states the rights and powers of a debtor. It does not allow the debtor the same scope of action as a Chapter 11 debtor-in-possession. Therefore, the trustee is an indis-pensable party in filing this suit. The debtor has named the trustee as a defendant, apparently to meet the requirements of Bankruptcy Rule 7019.

value" test. The Court has not found a definitive case on point, but believes that there could be no higher standard than that the bid equals or exceeds 70% of the fair market price (*Durrett v. Washington National Insurance Co.*, 621 F.2d 201 (5th Cir.1980)). If this sale meets the 70% rule, there is no purpose in analyzing whether the *Ehring* opinion also applies to post-petition transfers.

The Court is not able to ascertain the true value of the property for the debtor keeps changing her contention. In her most recent declaration she states that as of September, 1988, the property had a value of $140,000.00. In her Chapter 13 statement in the present case (filed in July 26, 1988) she states that the value was $125,000.00. In her prior Chapter 13 she states the value of $95,000.00 as of March, 1987. The Court does not find any justification for these rapid increases in value.

However, even if the debtor is correct as to the present fair market value of the property, the bid of $107,000.00+ is still in excess of 70% of her contended fair market value of the property. So the attack on the sale as to the value paid must fail.

Because the purchasers are bona fide purchasers, summary judgment is appropriate in this case.

### As to Foreclosing Creditor

However the matter goes deeper than that, for the debtor has also sued Fireman's Fund Mortgage, Inc. and it appears that they may have had knowledge of the current bankruptcy. The debtor is claiming that they violated the automatic stay.

Although Fireman's Fund Mortgage, Inc. defaulted by failing to answer the Complaint, debtor is not entitled to judgment unless she can put forth evidence in support of a prima facie case. The evidence presented in the current motion together with judicial notice of the Court's files is dispositive of the complaint as to Fireman's Fund and no further hearing is warranted.

The issue to be determined is whether the prospective relief set forth in the order for relief from stay granted in the prior Chapter 13 removes any requirement that the creditor again seek relief from stay at the filing of a subsequent bankruptcy. This Court believes that it does.

In her attack on the prospective relief provision of the order, the debtor relies on a comment in the case of *In re Taylor*, 77 B.R. 237 (9th Cir. BAP 1987). The Bankruptcy Appellate Panel questioned whether the Bankruptcy Court could enter an order that provided for prospective relief from the automatic stay, although this issue was not raised in the *Taylor* trial court, in the appeal, nor was it argued or briefed before the BAP. The comment in Taylor is dictum and not a determination of this important question.

Although BAP dictum may question the validity of an order for prospective relief, the Ninth Circuit had no such hesitancy in *In re Franklin*, 802 F.2d 324 (9th Cir. 1986). That case revolved around a stipulated order for relief from stay which had prospective language in it. The foreclosing creditor held its sale without regard for the subsequently filed bankruptcy. Although the grounds of appeal were strictly jurisdictional, the Ninth Circuit never questioned whether the bankruptcy judge had issued a valid and binding order for prospective relief. The mere fact that the *Franklin* order was based on a stipulation does not seem to be a material distinction so that a different result should be reached when the order in question occurs after a litigated hearing.

This Court finds that the order granted to Fireman's Fund in the prior Chapter 13 case can and does relieve Fireman's Fund of any responsibility to seek relief from the automatic stay prior to holding its foreclosure sale so long as a subsequent bankruptcy is filed by this debtor, her husband and co-debtor in the prior case, or their assignees or successors in interest. While the Court would be more comfortable if the order had a six-month or one-year limitation, the facts of this case do not show that there is any laches or other harm by passage of time. Although this order is rather broad, it does not seem to be fatally so. Had debtor appealed the granting of relief

from stay, she could have preserved the issues of prospective relief and the breadth of the order. But she failed to do so and is now collaterally estopped. *Burns v. Board of School Commissioners of City of Indianapolis, Indiana,* 437 F.2d 1143 (7th Cir. 1971), *Citibank, N.A. v. Data Lease Financial Corporation,* 645 F.2d 333 (5th Cir.1981).

Even if collateral estoppel did not prevent this attack, the Court would find that the prospective relief order is valid on several grounds. In the first place there is a res judicata effect to be considered. The rule of res judicata is that an order is binding in a subsequent action if it involves the same parties; the same issues; and it is valid, final and on the merits. This is the case here.

Debtor's attorney claims that the issues are different because the debtor "clearly had a change in financial circumstances during that time. She was able to file a new Chapter 13 and get a plan confirmed." (Opposition, Points and Authorities 4:19–21). There is no evidence on the alleged change of circumstances and the mere filing and confirmation of a Chapter 13 plan does not raise a presumption of a positive change of circumstance. In fact the current Chapter 13 statement and plan show a negative change of circumstances. The debtor now reveals 4 dependent children instead of two, shows reduced monthly income ($500 per month support payments rather than her ex-husband's salary of $1,800.00 per month), and states that she cannot cure the default in the 36–month period envisioned by Congress. No evidence at all is presented to show a positive change of circumstances.

Res judicata fills several public purposes, all of which apply in this situation. It preserves the judicial dispute resolution process against disrespect from multiple litigation of the same matter or multiple litigation with inconsistent results, it preserves courts against the burdens of repetitious litigation, and it provides a means of finality for ending private disputes. 18 Wright, Miller and Cooper, *Federal Practice and Procedure,* Section 4403 (1981). There is nothing so sacrosanct about the automatic stay that it should not be subject to the res judicata effect given to other types of litigation.

The purposes stated above are particularly compelling in this type of case because the automatic stay is "automatic." It requires no showing by the debtor, but is invoked by the mere filing of a piece of paper and the payment of a $90.00 fee. Many debtors have used and abused this (as has the debtor in this particular case). The frustration of parties in dealing with the multiple filing case has been demonstrated over and over again and is the subject of much judicial comment. This Court specifically dealt with that issue in the case of *In re Kinney,* 51 B.R. 840 (B.C.D.Cal.1985). There is no way available to the Court to prevent multiple filings and their detrimental effect on creditors who have previously fully and fairly litigated the automatic stay issues.[3] The "prospective order" does not interfere with the right of the debtor to file a bankruptcy, but does protect the creditor from multiple delays and removes the incentive of the debtor to act in an abusive manner.

Another reason that this Court believes that the order and its effect were appropriate is that the prospective relief provision is a relatively minor inconvenience to the debtor. Had there truly been a positive change of circumstances at the time of the filing of this bankruptcy, the debtor could have sought a temporary restraining order followed by an injunction, under the powers of the Court provided in 11 U.S.C. § 105. It is this Court's responsibility to protect the property of the estate and allow

---

**3.** 11 U.S.C. § 109(g) prevents refiling only if the debtor voluntarily dismisses the case after the filing of a motion for relief from the automatic stay or if the Court dismisses the case for willful failure of the debtor to abide by orders of the Court or to appear before the Court in proper prosecution of the case. The mere inability to make payments in a prior Chapter 13 would not be found willful, so all the debtor need do is to stop making payments, let the case be dismissed, and then refile in order to obtain another automatic stay. Also the Court cannot prevent the refiling of a case except under the 109(g) circumstances. (Section 349(a)).

the Chapter 13 debtor to carry out the provisions of the Bankruptcy Code and reorganize her life. All that was needed was action on the part of this debtor. She never sought such an order.

This Court believes that it is the intent of Congress that all the presumptions be on the side of the debtor at the time of the filing of a first bankruptcy. The automatic stay comes into being without the debtor taking any action to prove that she is entitled to it. When the creditor does seek relief from the stay, courts are reluctant to grant it to them until it becomes clear that the creditor is suffering detriment and that the debtor has not been able to provide adequate protection. Once this occurs, then relief from stay is granted. If the debtor chooses to allow the bankruptcy to be dismissed and then refiles, she cannot start afresh as though there had never been a prior determination. She only gets one presumption, not a series of new ones at the cost of $90.00 each.

After the creditor received this order, the balance shifted to protect the creditor and it became the responsibility of the debtor to take action and show that the creditor can be protected by a change of circumstances. This debtor never acted in that fashion.

The debtor was on notice of the prior order and of the prospective relief provisions. Her failure to vacate the order within the original Chapter 13 or to seek a new stay are fatal to her case. The prior Chapter 13 was dismissed in April, the debtor did nothing for several months, then filed two successive bankruptcies, and then took no further action. This is unacceptable behavior and should not be rewarded.

The Court therefore finds that the complaint against Fireman's Fund should be dismissed due to the inability of the plaintiff to support a prima facie case.