In re Adolph E. RAMBO and
Denise Rambo, Debtors.

Bankruptcy No. BK–96–10840–LN.

United States Bankruptcy Court,
W.D. Oklahoma.

May 28, 1996.

Lawrence A.G. Johnson, Johnson & Swenson, Tulsa, Oklahoma, for Jim Walter Homes, Inc.

J. Edward Oliver, Oklahoma City, Oklahoma, for Debtors.

Letha F. Sweeney, Oklahoma City, Oklahoma, for the Chapter 13 Trustee.

## ORDER ON CONFIRMATION OF CHAPTER 13 PLAN, ON OBJECTIONS THERETO, AND ON CREDITOR'S MOTIONS

PAUL B. LINDSEY, Chief Judge.

### BACKGROUND

This case was commenced by debtors when they filed, on February 8, 1996, their voluntary petition under Chapter 13 of the Bankruptcy Code.[1] Filed with the petition were documents denominated "Chapter 13 Debtor's Plan" and "Chapter 13 Plan Summary." Both documents were printed forms, with blanks to be filled in prior to filing.

The former document, the plan, contained the caption of the case, identified counsel for debtors, and bore debtors' signatures. It contained no further information whatever, none of the blanks in the form having been completed. That document was therefore of

---

1. References herein to statutory provisions by section number only will be to provisions of the Bankruptcy Code, 11 U.S.C. § 101 et seq., unless the context requires otherwise.

no assistance whatever to creditors, to the court, or to the Chapter 13 Trustee.[2]

The latter document, the plan summary, fortunately, was somewhat more helpful. It reflects proposed plan payments of $553.85, although it does not indicate whether those payments are to be made weekly, bi-weekly, semi-monthly, monthly or otherwise. It recites that creditor Jim Walter Home[s], Inc. ("JWH") holds a lien on debtors' home, and that debtors propose that JWH retain its lien, that monthly mortgage payments of $560 per month be paid, and that arrearages of approximately $17,000 be cured with interest at the contract rate, by payments of $375 per month, all such payments to be made through the plan.

The plan summary also reflects priority tax claims of the Internal Revenue Service, the Oklahoma Tax Commission, and the Oklahoma County Treasurer, in the respective amounts of $3,000, $2,000 and $500. It is assumed that debtors propose to pay such claims in full through the plan, although this is not specifically stated.[3] The plan summary indicates that there are no general, non-priority unsecured claims, that the total amount to be paid into the plan, the "base amount," is proposed to be $68,400, and that the plan length is estimated to be 57 months.

Given the foregoing, and no thanks to debtors or their counsel, the court has been able to determine that the $553.85 plan payments, in order to yield a base of $68,400 over 57 months, must be proposed to be made on a semi-monthly basis.

On February 14, 1996, JWH filed its Motion to Determine Automatic Stay Not in Effect, Motion to Dismiss for Bad Faith Filing, and Motion to Assess Attorney Fees, with supporting brief.[4] On February 16, 1996, JWH filed its Objection to Plan, with

supporting brief. On February 22, 1996, debtors filed their response to JWH's Motions and Objection.

On April 1, 1996, JWH filed its Supplement Its Objection to Plan and Motion to Dismiss, submitting the very recent decision in *In re Gledhill*, 76 F.3d 1070 (10th Cir. 1996). JWH concedes, however, that that case involved the application of the doctrine of res judicata to orders issued, not in a prior case, however similar, but in the same case. To this supplement, debtors filed what purported to be a response on April 3, 1996.

On April 16, 1996, JWH filed its further supplement, asserting that title to the property passed at the foreclosure sale, that debtors therefore lack title, and although conceding that debtors' redemption period does not terminate until the sale has been confirmed, that the confirmation hearing is so ministerial in nature that the automatic stay does not prevent JWH from attending that hearing and obtaining confirmation of the sale. It is further urged that debtors' only option at this time is to redeem the property by the payment in full of the entire debt, with its attendant costs, interest and attorney fees. This contention was not made, or at least it was not clearly articulated, in JWH's earlier pleadings. Debtors filed their response on April 18, 1996.

On April 22, 1996, this court held a hearing on confirmation of debtors' plan and on JWH's motions, at which counsel for JWH and for Debtors presented argument. At the conclusion of that hearing, the issues raised were taken under advisement.

Later, on May 7, 1996, JWH submitted, unsolicited, *Jim Walter Homes, Inc. v. Spears (In re Thompson)*, 894 F.2d 1227 (10th Cir.1990), as having a bearing on the issues which the court had taken under ad-

---

2. At no time have debtors filed any amendment to this wholly inadequate document, nor have they filed any other document which could be characterized as a proposed Chapter 13 plan. This court does not understand why the Chapter 13 Trustee had no objection to confirmation of debtors' plan, when no such plan existed.

3. Under § 1322(a)(2), a Chapter 13 plan must provide for full payment, in deferred cash payments, of all priority claims, unless the claimant agrees to different treatment.

4. All pleadings, briefs and correspondence of or on behalf of JWH have been signed by, and all

visement.[5] Counsel asserts that the decision relies upon authorities, most of which have been overruled by subsequent Supreme Court rulings. Counsel also asserts that the dissent in that case may now constitute the law of this circuit.[6]

Debtors' incredibly brief responses to the first two JWH supplements are only marginally responsive. Further, it is noted that debtors at no time, in any pleading or response submitted by them, directly address the authorities cited by JWH in support of its position. Neither does any such pleading or response submitted by debtors contain a single citation to authority of any kind.

## THE CONTENTIONS

In support of its Motion to Determine Automatic Stay Not in Effect, JWH urges that, under principles of res judicata, or of collateral estoppel, an order lifting the automatic stay in a previous bankruptcy case filed by debtors, having been issued by the court in a proceeding involving the identical parties and the identical collateral, precluded the application or enforcement of the automatic stay which came into being upon the filing of this case.

In support of its Motion to Dismiss for Bad Faith, JWH urges that the filing of this case was solely for the purpose of preventing the completion of foreclosure proceedings commenced after the lifting of the stay in the previous bankruptcy case, and that in the circumstances, this constitutes bad faith.

In support of its Motion to Assess Attorney Fees, JWH urges that it is entitled to the award of its attorney fees "for the monstrous expense this Creditor has been put to in objecting to an obviously flawed Chapter 13 filing...."

Debtors, in an extremely brief pleading in response to the first three motions filed by JWH, concede that they filed a bankruptcy case in 1995, and that that case was dismissed without prejudice, no request having been made for dismissal with prejudice. They also assert that they filed the current case in good faith in order to save their home from foreclosure; that their good faith filing does not entitle JWH to attorney fees; and that the order modifying the automatic stay was filed September 21, 1995, in the previous case, and has no effect on this case.

In support of its objection to confirmation of debtors' Chapter 13 plan, JWH again asserts the alleged bad faith of debtors in filing the petition and proposing the plan. JWH also contends that the plan does not provide for the continuing insurance of its collateral, for the cure of arrearages within a reasonable time, or for the cure of arrearages in accordance with the terms of the underlying mortgage document.

In response to the JWH objection to confirmation, debtors' response, in its substantive entirety, is as follows: "That Debtor [sic] intents [sic] to pay off the full arrearages in full at the contract rate of interest."

## DISCUSSION

The court first notes that while debtors' pleadings and briefs are totally devoid of supporting authority, and are largely unresponsive, the briefs of JWH suffer from an almost diametrically opposite shortcoming, rendering them almost as useless to the court. The JWH briefs contain few statements by counsel in support of his contentions. Instead, counsel simply cites a case, without discussion, and inserts into his brief lengthy excerpts from the opinion in that case. These excerpts, which along with the balance of the briefs, obviously have not been carefully proofread, contain numerous errors, and more importantly contain references in the text, the source, relevance and materiality of which are nowhere explained. The excerpts frequently consist of virtually the entire opinion of the court, as though counsel found a headnote which sounded good and simply inserted virtually the entire opinion

---

arguments in its behalf have been made by its counsel, Lawrence A.G. Johnson.

**5.** Counsel submitted only a slip opinion, without citation, even though the case has appeared in the official reporter for more than six years.

**6.** It is noted that there is no dissent in *Thompson,* but a separate concurrence in the judgment, in which the reasoning of the court, not its decision, is criticized.

without reading the text or determining what portion or portion thereof might be germane to the issues facing the court and counsel in this case.

■ As a prime example of the foregoing, the court first addresses the JWH contention that the order modifying the automatic stay which was issued in debtors' previous bankruptcy case should preclude the creation or viability of any automatic stay in this case, under the doctrine of either collateral estoppel or res judicata.

Counsel begins his discussion of this argument by quoting from the United States Supreme Court, without providing the source of the quotation or any citation thereto.[7] Next, the following appears:

See *In re Darling*, 141 B.R. 239 (Bkrtcy. M.D.Fla.1992):

Accordingly, the order granting relief from the stay in debtor's chapter 7 case has *res judicata* effect in this chapter 13 case if the order was a final adjudication of the merits of an identical cause of action between the same parties. Under such circumstances, debtor would be precluded from raising any claim with regard to the pending motion for relief that could have been raised in the earlier case.

The quoted language from *Darling* appears in 141 B.R. at 241, at the reference to headnote 4.[8] Immediately following that language, after a brief paragraph noting the possible application of the doctrine of collateral estoppel, the *Darling* court continues as follows:

In a case factually similar to this case, the Eleventh Circuit indicated that neither *res judicata* nor collateral estoppel is applicable in automatic stay litigation. *In re Saylors*, 869 F.2d 1434 (11th Cir.1989). In the *Saylors* case, the debtors initially filed a chapter 7 petition and received a discharge on August 25, 1987. The holder of the first mortgage on debtors' residence then

filed a motion for relief which was granted on December 29, 1987. The day after such relief was granted debtors filed a chapter 13 petition seeking relief only from the arrearage owed on the first mortgage. *Id.* at 1438.

The mortgage holder argued that the chapter 13 plan was not proposed in good faith because the petition was filed the day after relief from the stay was granted. He further contended that lifting the stay in the chapter 7 case was a final adjudication of his right to foreclose and that under *res judicata* and collateral estoppel the debtors were barred from challenging that determination. *Id.* at 1438.

The Eleventh Circuit rejected the mortgage holder's argument, stating:

The bankruptcy court's order of December 29 merely lifted the automatic stay in the chapter 7 case. In no way did the order purport to be a permanent adjudication of Jim Walter's right to foreclose. The order also cannot be construed as lifting the stay in the chapter 13 case that automatically became effective the next day. The property of Saylors' chapter 13 estate is distinct from the property of the chapter 7 estate that preceded it. . . . Consequently, each stay also is distinct.

*Id.* Thus, the Court indicated that the issues involved in stay litigation over the same property in subsequent bankruptcy filings by the same debtor are different, precluding the application of either *res judicata* or collateral estoppel.

Applying *Saylors* to the instant case, the property of the prior chapter 7 case is distinct from the property of the pending chapter 13 case, as are the automatic stays in each case. The lifting of the stay in the chapter 7 case does not automatically carry over to this chapter 13 case. Consequently, the stay created in this case under

---

7. The quotation, and the citation to it, was found by the court in a case subsequently cited and relied upon by JWH.

8. The text of headnote 4, which references Judgment, Key Number 715(3), is as follows: "Chapter 13 debtor was not collaterally estopped, or precluded on principles of res judicata, from

challenging mortgagee's entitlement to relief from stay to exercise its rights against mortgaged property, by virtue of prior order lifting stay in earlier Chapter 7 proceeding to allow mortgagee to proceed against same property. Bankr.Code, 11 U.S.C.A. § 362."

§ 362 enjoins [the mortgage creditor] from taking action to collect its pre-petition debt.

*Darling,* 141 B.R. at 241–242.

The *Darling* court thus reached the diametrically opposite result from that for which counsel cited it. Not only that, but the *Darling* court based its decision upon *Saylors,* a court of appeals decision in which JWH was the principal creditor, in which it made the same argument as it has made in this case, and in which that argument was firmly rejected. Not surprisingly, *Saylors* is not cited by JWH in this case. In these circumstances, this court is compelled to conclude that either counsel for JWH did not read so much as the headnote in Darling, much less the entire opinion, which seems extremely unlikely, or, having read the opinion, chose to rely upon a single paragraph, totally out of context, which would suggest a decision totally contrary to that which was actually reached, in the hope that this court would accept the reference and its implications without question or review.[9]

Whatever the motivation of counsel, his actions in this regard compel this court to conclude that counsel should be required to show cause why sanctions should not be imposed on him, on JWH, or on both counsel and JWH, under Rule 9011, Fed. R.Bankr.P.[10] By separate order, the court will set that issue for hearing.

Counsel for JWH next cites *In re Standfield,* 152 B.R. 528 (Bankr.N.D.Ill.1993), for the proposition that where there had been no showing of a change of circumstances from those which existed in a prior case where debtors had failed to make the required plan payments, and the automatic stay was lifted, "[t]he first order modifying the stay was held to bar any further stay under *res adjudicata.*" Such is simply not the case.

**9.** Debtors failed to call any of the foregoing to the attention of the court, or to so much as refer to *Darling* in their pleadings.

**10.** Rule 9011 provides that the signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argu-

In *Standfield* (spelled "Stanfield" in the JWH brief), the court found that the second bankruptcy case had been filed in bad faith. The only reference to *res judicata,* however, was with regard to a finding after notice and a hearing in the previous case, from which no appeal was taken, that the creditor which commenced its foreclosure proceedings, pursuant to a "drop dead" provision imposed by the court after debtors had defaulted on several occasions upon their obligation to make timely plan payments, had provided debtors with adequate notice of a hearing in the state court proceedings. When debtors attempted to reargue the adequacy of the notice in the subsequent bankruptcy case, the court properly held that argument to be barred by the doctrine of *res judicata.* So far as appears in the opinion, the doctrine of *res judicata* was never sought to be applied to preclude the initiation or application of the automatic stay in the subsequent case.

Another case relied upon by JWH, from which it inserted four single-spaced pages of text without a word of comment or argument, is *In re Abdul–Hasan,* 104 B.R. 263 (Bankr. C.D.Cal.1989). In that case, the court indeed states that the doctrine of *res judicata* may be applicable to automatic stay litigation. The facts in *Abdul–Hasan,* however indicate that the statement was unnecessary to the decision in that case. The statement may therefore be deemed to have been mere *obiter dictum.*

In an earlier bankruptcy, the court had entered an order lifting the automatic stay as to a secured creditor, authorizing it to enforce its security interest in its collateral in state court. The order also awarded prospective relief, specifically providing that debtors:

ment for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case. The Rule mandates, either on motion or on the court's own initiative, the imposition of sanctions upon any person signing a document in violation of the Rule.

shall be bound by this Order in any conversion of this Bankruptcy proceeding or in any subsequently filed bankruptcy proceedings of any nature whatsoever, and as to any Automatic Stays issued relating to the interest of Secured Creditor, its assignees and/or successors in interest, and any such future Automatic Stay shall be null and void as to the interest in the property of the Secured Creditor, its assignees and/or successors in interest.

That order was not appealed and the case was later dismissed for the debtors' failure to make plan payments. Debtor later filed another Chapter 13 case. The secured creditor which obtained the order lifting the automatic stay in the previous case, even though it had notice of the filing of the second case, went forward with the sale of its collateral without again seeking relief from the automatic stay. Debtor challenged the validity of the post-petition sale. The court granted summary judgment in favor of the persons who purchased the property at the sale, having found that they were bona fide purchasers. Default judgment in favor of debtor and against the secured creditor, however, was denied, even though the secured creditor had not responded to the complaint or appeared in the case. The denial was based upon the court's finding that debtor could not make out a prima facie case in support of her contention that the secured creditor had violated the automatic stay. The court stated:

This Court finds that the order granted to Fireman's Fund in the prior Chapter 13 case can and does relieve Fireman's Fund of any responsibility to seek relief from the automatic stay prior to holding its foreclosure sale so long as a subsequent bankruptcy is filed by this debtor, her husband and co-debtor in the prior case, or their assignees or successors in interest. While the Court would be more comfortable if the order had a six-month or one-year

limitation, the facts of this case do not show that there is any laches or other harm by passage of time. Although this order is rather broad, it does not seem to be fatally so. Had debtor appealed the granting of relief from stay, she could have preserved the issues of prospective relief and the breadth of the order. But she failed to do so and is now collaterally estopped. [Citations omitted.]

*Abdul–Hasan*, 104 B.R. at 266–267.

It is at this point in the *Abdul–Hasan* opinion that the court addressed the doctrine of *res judicata*. The court determined that the order for prospective relief was valid and binding.[11] Although *res judicata* was mentioned, it would appear that it was not an issue in the case. The court simply enforced the earlier order as a valid and binding order which remained in full force and effect.

In any event, it is clear that in this case, there is no order in the previous bankruptcy providing for prospective relief from the automatic stay. Thus, *Abdul–Hasan* would appear to have limited, if any, applicability to the issues before this court at this time.

JWH's request for a determination that the automatic stay of § 362(a) is not in effect in this case, by reason of the entry of an order lifting the automatic stay in a previous bankruptcy, in a proceeding involving the same parties and the same property, will be denied.[12]

The somewhat belated reliance of JWH upon the passage of title to property at the time of the foreclosure sale as authority for the proposition that debtors' only option at this point is to redeem the property by payment of the debt against it in full with all attendant fees and costs, is similarly without merit.

In *Sooner Federal Savings and Loan Association v. Oklahoma Central Credit Union*, 790 P.2d 526 (Okla.1990), the Supreme Court

---

**11.** The *Abdul–Hasan* court expressed concern that the order did not contain any time limitation as to its applicability and that the order was extremely broad. It determined, however, that there was no indication of laches or other harm by the passage of time, and that the order did not appear to be fatally broad. It noted that had the order been appealed from, these issues would have been preserved. Having not appealed, the

debtor was held to be barred by collateral estoppel from raising them.

**12.** It is noted that JWH has not filed a motion for relief from the automatic stay in this case, apparently being satisfied to rely upon its other contentions.

of the State of Oklahoma, citing *Lincoln Mortgage Investors v. Cook,* 659 P.2d 925 (Okla.1982) and *State ex rel. Commissioners of the Land Office v. Warden,* 168 P.2d 1010 (Okla.1946), reaffirmed that a borrower or any other person having an interest subject to a lien has a right of redemption that is not extinguished at the time of sale, but extends until the order of sale is confirmed. *Sooner Federal,* 790 P.2d at 529.

In *Jim Walter Homes, Inc. v. Spears (In re Thompson), supra,* 894 F.2d 1227, submitted by JWH as its final supplement to its briefs, the bankruptcy case was filed after the entry of judgment in a foreclosure action, but prior to the sale. In its discussion, the *Thompson* majority cites *Lincoln Mortgage Investors v. Cook, supra,* 659 P.2d 925, as authority for the proposition that Oklahoma law permits redemption of mortgaged property not simply until the date of the foreclosure judgment, but until a foreclosure sale. It then notes that approximately half of all the states go beyond that and allow a statutory period of redemption after sale. Curiously, the court does not state that Oklahoma is one of those states, even though that was the holding in *Lincoln Mortgage.* Further, *Thompson* does not cite *Sooner Federal,* which reaffirmed that holding of *Lincoln Mortgage,* even though *Sooner Federal* was decided prior to *Thompson.*

Neither does the separate concurrence in *Thompson* seem to recognize that Oklahoma law does not terminate a debtor's redemption rights until after confirmation of the foreclosure sale. It is not clear whether or to what extent the decision, or the concurrence, would have been altered by the recognition of the distinction. The majority opinion contains some discussion of the difference in the relationship of the parties between a sale to a bona fide purchaser and a sale to the mortgagee, since in the latter case the relationship between mortgagor and mortgagee would be essentially unchanged. The majority, however, specifically declines to decide the effect, if any, the identity of the purchaser at the sale would have upon debtors' right to de-accelerate and cure, since the issue was not before the court.

The concurrence in *Thompson* simply notes that the approach of the majority may be difficult to apply, in view of its refusal to address the problem of whether the right to cure should continue during the state law redemption period when the mortgagee purchases the property at the sale. The concurrence does not indicate how it would decide that issue if presented with it.

This court has therefore been provided with no controlling authority supporting the JWH argument, that the right to cure defaults while maintaining regular payments under § 1322(b)(5) is unavailable after the foreclosure sale, even though the redemption period under applicable non-bankruptcy law continues after the sale and until its confirmation.[13] This court is of the view that such right extends to the time when the redemption period has been irrevocably terminated. As a result, the objection of JWH based upon that argument, is overruled. This court holds that debtors' Chapter 13 plan may propose to cure pre-petition defaults under their home mortgage and maintain regular payments under § 1322(b)(5).

This court also rejects the assertion of JWH that the authorities cited by the majority in *Thompson,* which address whether and in what circumstances a Chapter 13 plan may propose de-acceleration and curing of defaults in connection with residential mortgages, have been "mostly overruled by *Rake v. Wade* [508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1983) ] as well as *Nobelman* [*v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1983) ]." Clearly, *Rake* and *Nobelman* have had far-reaching effects upon Chapter 13 practice, and their holdings have effectively reversed prevailing practices in many courts, with regard to the payment of interest on arrearage claims, and to bifurcation and "strip-down" of residential mortgage claims and liens, respectively. There has been no suggestion, however, so far as this court is aware, that either of those cases has had the effect of

---

**13.** Section 1322(b)(5) provides that the plan may provide for the curing of any default within a reasonable time and maintaining payments while the case is pending on any secured claim on which the last payment is due after the date on which the final payment under the plan is due.

negating the salutary provisions of § 1322(b)(5).[14]

## DECISION

 Since the debtors in this case have not filed a viable Chapter 13 plan, but merely a Plan Summary, which itself leaves a great deal to be desired, confirmation is of course impossible at this time. In the circumstances, however, this court is of the view that it would be inequitable to dismiss debtors' case as having been filed in bad faith, when the obvious and substantial shortcomings of the record may well be due to the failure of their counsel to properly attend to his responsibilities. Such an action by the court at this time would punish debtors and reward JWH, and neither of those results is justified in the circumstances of this case. As should be clear from the foregoing discussion, neither counsel has distinguished himself in this matter. The court sincerely hopes, that the level of their professionalism will improve markedly as the case progresses.

Debtors will be given ten days from the date of this order within which to file and serve upon all parties in interest herein a proper Chapter 13 plan, containing sufficient information to permit, after notice and a hearing, a determination as to whether such plan meets the requirements of § 1325(a) for confirmation. If any amendments to debtors' schedules are necessary or appropriate, such amendments shall likewise be filed concurrently with the filing of the Chapter 13 plan. Debtors shall be responsible for service of their plan and any amended schedules which may be filed. A hearing on confirmation of the plan shall be held at the earliest possible date following its filing and service, and debtors shall be responsible for obtaining such a hearing date and time, and for service of the notice of that hearing as well. The contentions and objections of JWH, to the extent not dealt with herein, shall be deemed to be reasserted with respect to any plan hereafter filed by debtors, unless modified or amended, and need not be refiled or reserved in order to be considered by the court at the hearing on confirmation of the plan.

Should debtors fail to file their plan within the ten day period provided by this order, the Chapter 13 trustee is hereby directed, at the conclusion of that period, to prepare and submit to the court, *ex parte*, an order dismissing this case.

**IT IS SO ORDERED.**

---

14. JWH does not rely upon new § 1322(c), added effective October 22, 1994. Under that provision: "Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law...."