**In re Adolph E. RAMBO and Denise Rambo, Debtors.**

**Bankruptcy No. BK–96–10840–LN.**

United States Bankruptcy Court, W.D. Oklahoma.

Aug. 23, 1996.

Lawrence A.G. Johnson, Tulsa, Oklahoma, for Jim Walter Homes, Inc.

J. Edward Oliver, Oklahoma City, Oklahoma, for Debtors.

Letha Sweeney, Oklahoma City, Oklahoma, for Chapter 13 Trustee.

1. References herein to statutory provisions by section number only will be to provisions of the Bankruptcy Code, 11 U.S.C. § 101 et seq., unless the context requires otherwise.

2. *Rambo,* 196 B.R. at 183–186.

### ORDER ON SUPPLEMENTAL OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN AND ON OBJECTION TO CREDITOR'S PROOF OF CLAIM

PAUL B. LINDSEY, Chief Judge.

### BACKGROUND

Debtors commenced this case by filing, on February 8, 1996, their voluntary petition under Chapter 13 of the Bankruptcy Code.[1] On May 28, 1996, this court entered in this case its "Order on Confirmation of Chapter 13 Plan, on Objections Thereto, and on Creditor's Motions." *In re Rambo,* 196 B.R. 181 (Bankr.W.D.Okla.1996). In that order, this court addressed, and rejected, the contention of creditor Jim Walter Homes, Inc. ("JWH") that, under principles of *res judicata,* or of collateral estoppel, an order lifting the automatic stay in a previous bankruptcy case filed by debtors, having been issued by the court in a proceeding involving the identical parties and the identical collateral, precluded the application or enforcement of the automatic stay which came into being upon the filing of this case.[2]

Also in that order, this court rejected as being without merit the JWH contention that because title to property passed at the time of the foreclosure sale, debtors' only option thereafter was to redeem the property by payment of the debt against it in full with all attendant fees and costs.[3]

This court then directed that debtors file an amended Chapter 13 plan, and ordered that a hearing on confirmation of the amended plan be held at the earliest possible date after its filing. It directed that the remaining contentions of JWH be reserved, to be considered at the hearing on confirmation of the amended plan.[4]

This court subsequently, on June 12, 1996, in furtherance of a portion of the May 28

3. *Rambo,* 196 B.R. at 186–187.

4. *Rambo,* 196 B.R. at 188.

order,[5] and pursuant to notice and a hearing, entered its order imposing sanctions upon counsel for JWH under Rule 9011, Fed. R.Bankr.P.

## THE SUPPLEMENTAL OBJECTION TO CONFIRMATION

In its May 28, 1996 order, this court noted that JWH did not rely upon the new § 1322(c).[6] Section 1322(c), enacted as a part of the Bankruptcy Reform Act of 1994, and effective October 22, 1994, is in material part as follows:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
>
> > (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law. . . .

On July 17, 1996, JWH filed herein a pleading entitled, in part, "Supplemental Objection to Proposed Plan," in which it relies upon § 1322(c)(1).[7] In support of its position, JWH cites *In re Smith,* 85 F.3d 1555 (11th Cir.1996).

> In *Smith,* the court of appeals holds that:
> [W]hen a debtor files for Chapter 13 bankruptcy following the foreclosure sale of his property, he can cure the default through an exercise of his Alabama statutory right of redemption. This right cannot be modified under a Chapter 13 plan, and it must be exercised as dictated under Alabama law by making a lump sum payment within one year of the foreclosure sale that includes the principal, interest and other charges under the mortgage.

*Smith,* 85 F.3d at 1561.

It is noteworthy that the decision of the court of appeals in *Smith* is not based upon § 1332(c)(1). After noting that § 1322(c)(1) was enacted as a part of the 1994 amendments to the code, the court adds:

The 1994 amendments do not apply with respect to cases commenced before October 22, 1994. Smith filed for bankruptcy on December 29, 1993, and, therefore, this subsection is not applicable to this case. It should be noted, however, that if we were to apply the amended version of section 1322, the foreclosure sale of Smith's property *most likely* would have cut off his ability to cure the default on his mortgage. See *In re Sims,* 185 B.R. 853, 867 (Bankr. N.D.Ala.1995) (holding that the amended section 1322(c)(1) unambiguously prohibits the debtor from reinstating the mortgage under a Chapter 13 plan where there has been a prepetition foreclosure sale). [Emphasis supplied.]

*Smith,* 85 F.3d at 1558, n 3.

The *Sims* court, focusing on the words "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law," finds that § 1322(c)(1) is clear and unambiguous.[8] After a discussion of "applicable nonbankruptcy law" and the law of Alabama with regard to mortgage foreclosures, the court makes the following statements:

> At the time of the actual sale, the debtor lost the ability to reinstate the mortgage, decelerate the indebtedness and resume payments according to the mortgage contract's pre-default terms under 11 U.S.C. Section 1322(b). This is the result mandated by Congress in the Reform Act under Section 1322(c)(1). Congress has adopted the date of the foreclosure sale as the termination date and in so doing has limited the debtor's ability to save her home in a Chapter 13 case and obtain a fresh start.

*Sims,* 185 B.R. at 866.

Immediately following the foregoing statements, the *Sims* court states that it questions the wisdom of the new statutory provision, and continues as follows:

> This result is not in accord with the public policy behind chapter 13 and behind the

---

**5.** *Rambo,* 196 B.R. at 184–185.

**6.** *Rambo,* 196 B.R. at 188, n. 14.

**7.** Debtors' petition herein was filed after the foreclosure sale of their property was held, but before the hearing on confirmation of that sale.

**8.** *Sims,* 185 B.R. at 864.

Bankruptcy Code as expressed in Section 541. In Alabama the right of redemption is an interest in property created by state law, and in an effort to give debtor's [sic] a chance to save their homes, the debtor should be able to decelerate the indebtedness and reinstate the mortgage as long as the debtor has a property right in the property. This is in accord with the broad right to cure as set forth in *In re Hoggle* [12 F.3d 1008, 1010 (11th Cir.1994) ].

*Sims,* 185 B.R. at 866–867.

This court is in complete agreement with its colleague in the Northern District of Alabama, that the result which he felt compelled to reach in *Sims* is contrary to bankruptcy policy in general and Chapter 13 policy in particular. This court, however, is equally certain that that result is neither necessary nor appropriate in this case.

In its extensive discussion of § 1322(c)(1), a leading bankruptcy treatise [9] notes that the provision was intended to overrule *Matter of Roach,* 824 F.2d 1370 (3d Cir.1987), which had held that a debtor could not cure a mortgage after a foreclosure judgment if state law did not permit a cure after judgment, finding that that decision was "in conflict with the fundamental bankruptcy principle of allowing the debtor a fresh start through bankruptcy." [10]

The *Collier* discussion continues (footnotes omitted), as follows:

Section 1322(c)(1) provides that a default on a mortgage on the debtor's principal residence may be cured until the residence is "sold at a foreclosure sale" that is conducted in accordance with applicable non-bankruptcy law. The legislative history states that the debtor may cure a home mortgage default "at least through completion of a foreclosure sale under applicable nonbankruptcy law."

The statutory language and legislative history thus leave to state law the question of when a foreclosure sale has been completed. In some states, a sale may not be deemed completed until the court has entered an order confirming the sale, or until a sheriff has conveyed the property, or until a debtor no longer may redeem the property. It may well be significant that Congress did not say that the debtor may cure "until the sale," or "until the date of the foreclosure sale," indicating that the completion of the sale might be on a later date than the date of the auction.

In any case, the legislative history indicates that section 1322(c)(1) is a permissive rather than a restrictive provision. The House Report states that "if a State provides the debtor more extensive 'cure' rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy." The statutory language does not state that the debtor may cure if and only if there has not been a foreclosure sale, nor does it state that the debtor may not cure after such a sale if state law permits a cure. It was not the intent of Congress to cut off cure rights which debtors previously had.

This court does not doubt that the intention of Congress, as stated in the foregoing *Collier* excerpt, was not to reduce cure rights previously possessed by debtors, but to extend those rights for those debtors in whose jurisdictions they were unduly restrictive. In this court's view, however, notwithstanding the statements and analysis in *Collier,* the language which the Congress adopted to achieve its stated intention may well have fallen short of its mark. While it is quite clear that cure is possible *"until* the residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law," it is extremely difficult to read into the statutory language any intention to permit the extension of the cure period beyond sale in the event "applicable nonbankruptcy law" would permit a later cure. Thus, it appears that Congress, contrary to its stated intention, may have restricted the cure period in some jurisdictions.

**9.** 5 King, *Collier on Bankruptcy* ¶ 1322.14A, pgs. 1322.49–51, (15th ed. 1995).

**10.** References in *Collier* to the legislative history with regard to § 1322(c)(1) are in each instances to remarks of Rep. Jack Brooks, and may be found at 140 Cong.Rec.H 10769 (daily ed. October 4, 1994).

■ As the *Sims* court correctly noted, statutory interpretation must begin with the language of the statute itself, and if the statutory scheme is "coherent and consistent, there is no need for a court to inquire beyond the plain language of the statute." [11] Applying that principle after finding the statute to be clear and unambiguous, the *Sims* court declined to consider or apply the legislative history to the issue before it. The statement of facts in *Sims* indicates that the debtor in that case filed his petition in bankruptcy 28 days after the foreclosure sale was conducted, and seven days after the foreclosure deed was executed and filed. [12] In Alabama, the foreclosure sale is complete when the foreclosure deed is executed. [13] In the circumstances, it is difficult to quarrel with the result reached in that case.

This court does, however, quarrel with one particular statement of the *Sims* court. That is its conclusion that "Congress has adopted the date of the foreclosure sale as the termination date...." As is pointed out in the *Collier* excerpt, *supra*, the language adopted makes no mention of the *date* of the foreclosure sale. The language adopted is "... until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law ..."

■ This court agrees with the court in *In re Barham*, 193 B.R. 229, 232 (Bankr. E.D.N.C.1996), which held that a property is "sold" at a foreclosure sale only when the foreclosure sale is completed. Thus, such language can only be interpreted to mean that cure is permitted until the time when the foreclosure sale is completed under local law. It appears obvious that a foreclosure sale can not be found to have been "conducted in accordance with applicable nonbankruptcy law" until it is established that all steps required by that law in order to complete and validate the sale have been taken.

In Oklahoma, prior to the enactment of § 1322(c)(1), as this court pointed out at some length in its earlier order herein, it was

clear that a Chapter 13 debtor could cure a default under a foreclosed mortgage at any time prior to the entry of an order confirming the foreclosure sale. [14] In this court's opinion, the enactment of § 1322(c) has not changed that result.

■ Since an order confirming the sale must be obtained in order for the sale to be valid, it follows that until such order is obtained, the sale may not be found to have been "conducted in accordance with applicable nonbankruptcy law." *See Sooner Federal Sav. & Loan Ass'n v. Oklahoma Central Credit Union*, 790 P.2d 526, 529 (Okla.1989) (holding that a judicial sale on foreclosure is neither conclusive nor binding in the sense of transferring legal title to the purchaser until it is effectively confirmed).

This court also rejects the contention that the confirmation process should be ignored as simply a ministerial act. Confirmation is an integral part of the process, without which it can not be consummated. Further, on the same issue, it has been stated that:

> Even if a court's discretion to approve or disapprove judicial sales were not broad, as the cases state, it would be bad policy to characterize the court's confirmation decision as a ministerial act. A court's rulings should not be considered to be mere formalities in some cases—those cases in which the court confirms a sale—but not in other cases—those cases in which the court does not confirm.

*McEwen v. Federal Nat. Mortg. Ass'n*, 194 B.R. 594, 597 (N.D.Ill.1996).

■ Thus, based upon the foregoing, this court finds, concludes and holds that a Chapter 13 debtor whose petition in bankruptcy is filed in this district after a foreclosure sale has been conducted but before an order confirming the sale has been entered, may cure the default "with respect to, or that gave rise to, a lien on the debtor's principal residence,"

11. *United States v. Ron Pair*, 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1029–30, 103 L.Ed.2d 290 (1989).

12. *Sims*, 185 B.R. at 855.

13. *Sims*, 185 B.R. at 866.

14. *Rambo*, 196 B.R. at 186–188.

under either § 1322(b)(3) or 1322(b)(5).[15] Of course, there can now be no doubt that the right to cure is available to any debtor filing a petition prior to the conduct of the foreclosure sale.

## THE OBJECTION TO CLAIM

Debtors objected to the proof of claim filed by JWH. At a hearing held pursuant to appropriate notice, it ultimately was determined that debtors' sole remaining objection to the proof of claim was the item therein representing the fees and expenses of JWH's counsel, in the amount of $9,770.52.

This court has reviewed the documentation supplied by counsel in support of his fees and expenses. The expense items are, in this court's opinion, entirely appropriate and authorized by the governing documents in this case. The entries concerning the expenditure of counsel's time in this matter are less than fully complete, but the court has been able to determine that much of the time was appropriately spent in this long-running, highly-contested foreclosure matter.

The court is concerned that counsel was apparently required to travel from Tulsa, Oklahoma to Oklahoma City on 11 separate occasions over the 15 months covered by the documentation, and that the total amount requested for such travel, exclusive of tolls and meals, is $1,045.80. The documentation makes no attempt whatever to disclose whether the travel charges are computed on mileage, time, or on some other basis.

The documentation contains telephone calls, the subject matter of which are not revealed, to various persons and entities, without reference to their connection to this case. The charges for the time expended on these telephone calls total $268.75. One of the last entries in the documentation is for three hours at $125 per hour, a total of $375, for counsel's attendance at the hearing before this court on whether or not counsel, or JWH, should be sanctioned under Rule 9011, Fed.R.Bankr.P. While it may be entirely appropriate for counsel to charge that time to JWH, this court sees no basis for passing the charge on to the debtors. The errors which gave rise to the hearing, which the court found to be particularly egregious, occurred during the pendency of this case, but they certainly were not the errors of the debtors.

The court, in its review of counsel's documentation, noted that counsel's timekeeping is in increments of one-quarter hour. A number of entries are said to have occupied exactly one or a multiple of one hour. Others are said to have occupied one-quarter or one-half hour, when the task for which the entry was made should not have taken that amount of time. As counsel doubtless is, or certainly should be, aware, this court has always required that time records be kept in increments of one-tenth hour. Larger increments, in this court's view, inevitably lead to "padding" of time, to a greater or lesser degree.

This court's responsibility in this regard is to determine what amount is reasonable to reimburse counsel for his time and expenses in this case, chargeable to debtors under their mortgage. After review of the entire record, and considering its concerns, as expressed herein, this court has determined that $7,500 represents a reasonable amount which may be charged to debtors under their mortgage for the services and expenses of counsel for JWH. The court will therefore sustain the objection of debtors to the proof of claim filed by JWH to the extent the fees and expenses requested by counsel exceed $7,500. The objection will in all other respects be overruled.

Any and all other issues remaining on the subject of confirmation of debtors' proposed plan will be addressed and decided at a hearing previously scheduled to be held August 26, 1996.

IT IS SO ORDERED.

15. Accord, see *McEwen v. Federal Nat. Mortg. Ass'n.,* supra (confirmation); *In re Blair,* 196 B.R. 477 (Bankr.E.D.Ark.1996) (confirmation); *In re Barham,* supra (ten day upset bid period); *In re Crime Free,* 196 B.R. 116 (Bankr.E.D.Ark. 1996) (confirmation); *Matter of Ross,* 191 B.R. 615 (Bankr.D.N.J.1996) (delivery of sheriff's deed).