210 N.J. Super. 589 (1986)
510 A.2d 288
UNION COUNTY SAVINGS BANK, A CORPORATION, PLAINTIFF,
v.
BRENDA JOHNSON, SINGLE; ESAU BROCKINGTON, STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Chancery Division Essex County.
Decided February 26, 1986.
*590 Jeffrey M. Beck for plaintiff (Zucker, Goldberg, Becker & Ackerman, attorneys).
Steven M. Olitsky for defendant Brenda Johnson (Abramowitz & Olitsky, attorneys).
Paul R. Kenny for buyer at Sheriff's sale, N.J. Equitable Realty Co. Pension Trust (Booth, Kenny, Dougherty & McKenna, attorneys).
MARGOLIS, J.S.C.
This is an application by the mortgagor, Brenda Johnson (Johnson) to vacate a sheriff's sale and resulting deed recorded by an innocent third party purchaser.
*591 The mortgagee, Union County Savings Bank (Bank) brought the initial foreclosure action in April 1985. Johnson was served with the Complaint the following month. On July 2, 1985 default and final judgment were entered against Johnson in favor of the Bank. She does not challenge the propriety of the final judgment in foreclosure.
Pursuant to the judgment, a sheriff's sale was scheduled and conducted by the Essex County Sheriff's Department on September 10, 1985. There is no record of any adjournment. The property was sold at the sale to the highest bidder, New Jersey Equitable Realty Co. Pension Trust (Buyer).
Two weeks later, on September 25, 1985, Johnson filed a Chapter 13 bankruptcy petition. Unaware of this or any other change, the sheriff issued the deed to the Buyer under the terms of the sale. The deed was issued and recorded by the Buyer on October 2, 1985. Aside from filing the bankruptcy petition, Johnson made no objection to the Sheriff's sale within ten days of same or prior to the issuance of the deed.
On December 17, 1985, Johnson filed the instant application by order to show cause, initially to stay the scheduled writ of possession and ultimately to vacate the sale and deed. The court granted interim relief on the ground that Johnson may have been misled about an adjournment of the sale.
Johnson's bankruptcy confirmation has been adjourned pending disposition of this application. She claims that her attorney contacted the Bank's attorney before the sheriff's sale, and was told by "a representative" of the Bank's attorney that there was no objection to an adjournment. One of Johnson's attorneys testified that he obtained an adjournment from the Sheriff's Department on September 10. The sale was nevertheless conducted on September 10, allegedly without notice to either Johnson or her attorney. She claims to have been misled.
On the asserted "reasonable belief" that the sale was adjourned, Johnson filed the Chapter 13 bankruptcy petition and claims it stayed the sale and delivery of the deed. Moreover, *592 the Buyer is alleged to have known of Johnson's bankruptcy filing. Its acquisition of this knowledge is alleged to have given Buyer notice of Johnson's "objection to the sale" before the conveyance.
There are four components to Johnson's overall argument: First, she claims that the grant of the adjournment preserved her equitable right of redemption. Upon grant of the adjournment, the subsequent bankruptcy filing cured the default and stayed any and all further foreclosure proceedings. She argues that this court should follow the so-called federal rule: A Chapter 13 bankruptcy, if filed before the property is transferred to a purchaser for value, allows the debtor/mortgagor to retain her ownership rights in the premises pursuant to the bankruptcy plan. She relies on DiPiero v. Taddeo, 685 F.2d 24 (2d Cir.1982) and In re Cappadonna, ___ B.R. ___ No. 81-04970 (Bankr.N.J. Jan. 7, 1983).
Second, regardless of any adjournment, legal title did not vest in the Buyer until delivery of the deed. Under R. 4:65-5, the sheriff may not lawfully convey title if an objection to the sale is received before the actual conveyance. The Chapter 13 bankruptcy petition operates as an objection to the sale for purposes of the rule, and thus she contends that the deed must accordingly be vacated because the bankruptcy petition preceded the delivery. This assertion is supposedly buttressed by the general policy favoring the mortgagor's opportunity to redeem. She again relies on Taddeo and Cappadonna.
Third, the sale was procedurally improper because it had allegedly been adjourned. Any sale conducted on the original date is therefore ineffective, and results in a defective deed, citing N.J.S.A. § 2A:17-33 and R. 4:65-2.
Fourth and finally, she urges that the pertinent bankruptcy statute, 11 U.S.C. § 362, stays the sale in light of Johnson's (a) belief that the sale was adjourned, and (b) that her bankruptcy filing was prior to delivery of the deed. Other than the statute *593 itself, no authority is cited for this particular proposition. This argument is virtually identical to the first.
Thus, the following four issues are presented:
(I) Whether the mere filing of a Chapter 13 bankruptcy petition two weeks after a foreclosure sale, but prior to the delivery of the deed to a purchaser for value at the sale, constitutes an "objection" to the foreclosure sale pursuant to R. 4:65-5, allowing the resulting deed to be vacated?
(II) Whether a mortgagor retains any right of redemption after the sale, permitting the mortgaged property to become part of the bankruptcy estate under 11 U.S.C. § 362, so long as the deed was not delivered?
(III) Whether Johnson's claim that she received an adjournment, thus invalidating the resulting deed, has been proven?
(IV) Whether Johnson's claim that the deed must be vacated is barred by the doctrine of laches?

(I) Bankruptcy Petition as an "Objection" to the sale

R. 4:65-5, entitled "Sheriff's Sale: Objections" provides:
A sheriff who is authorized or ordered to sell real estate shall deliver a good and sufficient conveyance in pursuance of the sale unless a motion for the hearing of an objection is served upon him within 10 days after the sale or at any time thereafter before the delivery of the conveyance. Notice of motion shall be given to all persons in interest.... [Emphasis supplied].
After the sale, the deed is to be delivered to the Buyer unless the mortgagor files an objection. The rule does not require judicial confirmation of every sale. Hardyston Nat'l. Bank v. Tartamella, 56 N.J. 508, 511 (1970). In explaining what remains current practice, the court said:
We eliminated the motion to confirm and the order of confirmation, not to change the rights of the parties as they theretofore existed, but only to eliminate the paper work of a formal motion and order confirming a sheriff's sale which had become routine and of no practical value ... Thus we shifted the burden of going forward to the objector and obviated the entry of a formal order confirming the sale unless an objection was made to the sale. [Emphasis supplied].
The import of this procedure is that a defaulting mortgagor has 10 days following the sale or until the delivery of the deed to take affirmative action (by motion on notice to all parties in interest) in objection to the sale. This is a non-statutory equity *594 of redemption, Id., at 513, provided, however, that objections are filed under the rule. Ibid.
The only possible conclusion to be drawn from the debtor's failure to object pursuant to the rule is that the resulting deed is legally valid, independent of a court's separate confirmation of the sheriff's sale. Although legal title does not vest in the Buyer until the delivery of the deed, Cropper v. Brown, 76 N.J. Eq. 406, 419 (Ch. 1909), "the mortgagor has no right, as a matter of course, to redeem mortgaged premises after foreclosure sale and prior to the delivery of the sheriff's deed to a successful bidder." Penn Federal Savings and Loan Ass'n. v. Joyce, 75 N.J. Super. 275, 282-83 (App.Div. 1962).
Unless the Buyer's equitable title is properly questioned before the delivery of the deed, the Buyer's equitable title is indefeasible. Put another way, the Chapter 13 filing does not alone operate as an "objection" to the sale under the rule. Therefore, upon issuance of the deed, the buyer at the sale was vested with legal title to the property. Whatever inchoate rights the former mortgagor had at the time of her bankruptcy filing, prior to the delivery of the deed, were lost because she failed to object to the sale pursuant to R. 4:65-5.
Whether Johnson had a ground for equitable relief "independent of statute or rule of court" is addressed below. Her belief that an adjournment was granted could operate to allow redemption notwithstanding the rule. See Penn Federal, 75 N.J. Super. at 278. (Independent grounds for equitable intervention include fraud, accident, surprise, and irregularity in the sale).

(II) Chapter 13 filing as an "automatic" stay before delivery of the deed

In essence, Johnson's argument is: So long as the Buyer at the sale did not have legal title to the property which was transferred at delivery of the deed, the property became part of the "bankruptcy estate" pursuant to Chapter 13. This "stay" *595 was triggered by 11 U.S.C. § 362, and presumably 11 U.S.C. § 1322(b)(5)  which affords the right to "cure a default."
Initially, it must be conceded that state law determines the existence and extent of the right of redemption after the sale, or at any other point in the foreclosure action. E.g. Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Writing for a unanimous court, Justice Stevens declared:
Property rights are created and defined by state law. Unless some Federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and Federal courts within a state reduces uncertainty, discourages forum shopping, and prevents a party from receiving a windfall merely by ... the happenstance of bankruptcy.
[Id.; citation omitted.]
It follows that Federal courts recognize the state's rule with respect to the inchoate nature of the equity of redemption, including when the equity of redemption lapses. As noted above, by her failure to object by motion in the state court before delivery of the deed, Johnson lost her legal title to the property, and it vested in the Buyer upon delivery of the conveyance. Moreover, without an objection raised to the sale, the Buyer's equitable title was indefeasible from the time of the sale. Hardyston, 56 N.J. at 512-13.
On the other hand, given the status of the parties at the time of the bankruptcy filing, whether any stay under the code is triggered is wholly dependent upon whether the remaining property right (as determined by state law) is sufficient to be part of the bankruptcy estate. If it is non-existent, the stay is not triggered. Here, there may be nothing to stay. See e.g. 11 U.S.C. § 362(a):
a petition filed under ... this title ... operates as a stay ... of ...
(2) the enforcement, against the debtor or against the property of the estate, of a judgment obtained before commencement of the case under this title;
(3) any act to obtain possession of property of the estate or of property from the estate; ... [Emphasis supplied].
*596 This question is, however, a federal question. It may be restated as whether the automatic stay provision of the bankruptcy code tolls or suspends New Jersey's equity of redemption which is available to the mortgagor prior to the delivery of the deed. If it does, the deed issued to the Buyer is inoperative because Johnson filed her petition prior to the conveyance. If it does not, then legal title vests in the Buyer because Johnson made no objection to the sale. The Buyer's equitable title was irrefutable.
Federal authority on this issue is split. See, e.g., In re Jenkins, 19 B.R. 105 (Bankr.Colo. 1982) (Bankruptcy filing tolls redemption period because § 362(a) should be liberally construed). Accord, In re Johnson, 8 B.R. 371 (D.Minn. 1981) But compare, Matter of Tynan, 773 F.2d 177, 179 (7th Cir.1985), In re Glenn, 760 F.2d 1428, 1440 (6th Cir.1985) Johnson v. First Nat'l. Bank of Montevideo, Minn., 719 F.2d 270, 276 (8th Cir.1984) (The stay does not toll or suspend the applicable state redemption period because the only interest which the mortgagor had in the real estate after the sale was the right of redemption. The real property sold at the sheriff's sale did not become part of the estate). The latter rule appears to be the trend. Moreover, it has been adopted by three Federal Circuit Courts of Appeal.
In Johnson v. First Nat'l., the court discussed the impact of the stay provision on Minnesota's statutory period of redemption. Although the time allowed to redeem is longer in Minnesota than in New Jersey, the mortgagor's remaining "right" following a sale is identical. Once a sheriff's certificate is issued to the successful bidder following the sale, no further proceedings are required to vest absolute title to the property in the holder of the sheriff's certificate, assuming the debtor takes no affirmative steps to redeem the property. Id., at 277, citing MINN. STAT. § 580.12. Accord Hardyston, 56 N.J. at 512-13. (Objector has burden to object or title vests).
*597 While the court is of the opinion that this is the preferred view, this court is without jurisdiction to adopt it. To resolve the issue, it is necessary to construe the language and legislative history of the bankruptcy statute, specifically the stay and "cure" provisions. 11 U.S.C. §§ 362(a) and 1322(b)(2) and (5). Such statutory construction is the function of the Federal courts to the exclusion of any state court. 28 U.S.C. § 1334(a). Cf., U.S. Const. Art. 1, § 8, cl. 4. (Congress has the power to "establish Uniform Laws on the subject of Bankruptcies throughout the United States"). Butner, 440 U.S. at 54, 99 S.Ct. at 917, 13 C. Wright, A. Miller & S. Cooper, Federal Practice & Procedure, Jurisdiction (2 ed. 1984), § 3527 at 241.
The facts and effect of state law upon Johnson's rights in this case are identical to those in Johnson v. First Nat'l. What remains to be decided is which line of authority the Federal courts in New Jersey will follow in construing the impact of the federal bankruptcy stay provisions upon the post-sale equity of redemption under New Jersey law. This is unmistakably a federal question within the exclusive original jurisdiction of the Federal District Court. 28 U.S.C. § 1334(a), Cf. § 1334(c)(2), (Section allowing abstention by Federal court shall not be construed to limit applicability of the automatic stay in 11 U.S.C. § 362).
The authorities upon which Johnson relies do not alter this procedural result. All involve Federal courts construing the stay and "cure" of default provisions under the bankruptcy code. DiPiero v. Taddeo, 685 F.2d 24 (2d Cir.1982), In re Cappadonna, ___ B.R. ___ No. 81-04970, (Bankr.N.J. Jan. 7, 1983) The persuasiveness of these authorities is for the Federal court to decide.

(III) Johnson's Reliance on an Adjournment

R. 4:65-5 also provides: "On the motion, the court may summarily dispose of the objection; ..." It is well-settled that the burden of making the objection is upon the mortgagor. *598 Hardyston, 56 N.J. at 511; Knickerbocker Trust Co. v. Carteret Steel, 81 N.J. Eq. 130, 134 (Ch. 1912). Under Penn Federal Savings & Loan v. Joyce, 75 N.J. Super. 275, 278 (App.Div. 1962), the mortgagor may assert grounds for equitable intervention independent of rule or statute. It therefore does not matter whether she was out of time under R. 4:65-5, provided her position (ie. mistake, accident) has merit. See, e.g., Mutual Life Insurance v. Goddard, 33 N.J. Eq. 482 (Ch. 1881) (Mistaken belief that sale would be adjourned).
Johnson has not met the burden of proof justifying the severe relief sought against the purchaser for value.
It is significant that Johnson herself has neither testified nor stated her version of the facts in an affidavit or certification, particularly about the extent of any alleged reliance upon the grant of an adjournment. Furthermore, despite the representations made by her attorneys, there is no documentation whatsoever to substantiate the claim that an adjournment was granted and, in fact, the evidence is to the contrary.
In his testimony, Johnson's attorney was unable to identify the person in the Bank's law firm who allegedly voiced no objection to the adjournment. He neither confirmed the alleged grant by the Sheriff's Department of the adjournment nor paid mandated statutory adjournment fees. Significantly, neither of Johnson's attorneys state the date to which the sale was supposedly postponed; nor do they state whether they ever inquired about a new date. This would have been crucial to the further preservation of their client's rights. The inference to be drawn from such failure is that the matter never reached that point. There never was any adjournment.
Most important, the testimony and certifications by Johnson's attorneys are directly controverted by the affidavits of the Sheriff's foreclosure clerks. They have no record of any adjournment. It is standard procedure, however, that such records be kept and then an adjournment fee be paid. Neither exist in this case. Moreover, the clerk from whom an adjournment *599 was allegedly obtained was without authority to grant one.
The affidavits by the Sheriff's clerks are entitled to substantial weight because of their disinterest. An analogy can be drawn to Goldfarb v. Roeger, 54 N.J. Super. 85, 90 (App.Div. 1959), wherein it was held that the sheriff's return of process raises a rebuttable presumption that the facts recited therein are true. Uncorroborated testimony of the defendant alone is insufficient to impeach the return. Ibid. So, too, in this case, the uncorroborated testimony by Johnson's attorney that an adjournment was granted is insufficient to rebut the affidavits of the Sheriff's clerks. To do otherwise is to require proof of a negative by the Bank or the Buyer.
It appears that the only case dealing with a mistaken reliance by the mortgagor upon the grant of an adjournment is Mutual Life Ins. v. Goddard, 33 N.J. Eq. 482 (Ch. 1881). Even if Johnson's attorney had relied upon Goddard, it would not be helpful. In Goddard, it was admitted that the mortgagor had been given an unconditional promise of an adjournment by the mortgagee's attorney. The mortgagee's attorney had undertaken to contact the sheriff, which he and his agent neglected to do. Id. at 484.
By contrast, Johnson's counsel simply makes a bare assertion that he obtained an adjournment of the sale. Such an adjournment could not have been obtained contrary to established written policy, without reference to a new date, confirmation in writing, and the required fee paid to the sheriff. This court holds that the evidence is insufficient to prove that an adjournment was granted.

(IV) Laches

The buyer and the bank assert the doctrine of laches against Johnson's application. The argument is as follows: Johnson defaulted under the terms of the mortgage. Suit in foreclosure was instituted. She was properly served, yet she *600 defaulted, resulting in final judgment. There was no showing by her or her attorneys that an adjournment was granted. The Sheriff's sale was held and Johnson failed to make a timely objection other than to file a bankruptcy petition. The deed was delivered to the buyer upon payment. Johnson had notice of the writ of possession on November 14, 1985. No action was taken by her or on her behalf until the writ of possession was to be executed over one month later. This delay by Johnson has prejudiced the Bank and the Buyer. It is alleged that this application ought to be barred as unreasonable.
Justice Heher summarized the doctrine of laches in West Jersey Title, etc., Co. v. Industrial Trust Co., 27 N.J. 144, 153 (1958): "[L]aches involves more than mere delay, mere lapse of time. There must be delay for a length of time which, unexplained and unexcused, is unreasonable under the circumstances and has been prejudicial to the other party." Laches, then, is a doctrine founded upon the particular facts of every case. It is clearly recognized as a defense to foreclosure. Regardless of that, the court need not address the question based upon the rejection of Johnson's assertion that there was an adjournment. Without that objection to the sale, she cannot have the deed vacated. Similarly, the effect of the bankruptcy stay is irrelevant to the Buyer's assertion of laches against Johnson because the bankruptcy filing was before the conveyance.
Although the issue of laches need not be decided, Johnson's inaction did not rise to such level. Her counsel argued that reliance was placed on the existence of the adjournment. Though erroneous, this "reliance" was not necessarily unreasonable. Her delay in making the within application could have been excusable, especially since she retained a potential remedy under Penn Federal independent of R. 4:65-5 if her proof was sufficient to show mistake, (ie., promise of an adjournment). That the adjournment has not been proven does not equate her conduct with laches.
*601 At this point, neither the Bank nor the Buyer has been prejudiced. Accordingly, the doctrine of laches is inapplicable.
For reasons heretofore stated, this court rules as follows:
Johnson's claim that the filing of a Chapter 13 petition constituted an "objection" under R. 4:65-5 to the Sheriff's sale which would justify vacating the subsequent deed is without merit, and is thus denied. Jurisdiction is properly with the Federal court on whether the "stay" and "cure of default" provisions of the bankruptcy code toll or suspend what remains of the right of redemption as determined by state law. The extent to which Johnson's remaining interest in the property, if any, as of the time of filing of the petition became part of the bankruptcy "estate" is exclusively a federal question. The court finds that no adjournment was granted and any claim by Johnson based thereon is rejected. The doctrine of laches as asserted by the Bank and the Buyer against Johnson is inapplicable. Counsel for the Bank shall submit an appropriate order.