**In re Dwight BARHAM and Maria D. Barham, Debtors.**

**Bankruptcy No. 96–00007–5–ATS.**

United States Bankruptcy Court, E.D. North Carolina.

March 7, 1996.

---

Gregory P. Chocklett, Raleigh, NC, for Debtors.

William E. Brewer, Jr., Raleigh, NC, Amicus Curiae for Debtors.

Gerald A. Jeutter, Jr., Petree Stockton, L.L.P., Raleigh, NC, for BB & T.

## ORDER DENYING MOTION FOR RELIEF FROM AUTOMATIC STAY

A. THOMAS SMALL, Chief Judge.

The matter before the court in this chapter 13 case is the motion for relief from the automatic stay filed by Branch Banking & Trust Company (BB & T). This motion presents an important issue of first impression to this court regarding 11 U.S.C. § 1322(c), which was added to the Bankruptcy Code by the Bankruptcy Reform Act of 1994. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 301, 108 Stat. 4106, 4131 (1994). A hearing was held in Raleigh, North Carolina on February 20, 1996.

BB & T holds a Note and Deed of Trust on the debtors' residence that was executed on November 29, 1994, in the original principal amount of $54,800. Prior to the filing of this bankruptcy petition, the debtors, Dwight and Maria Barham, defaulted on their obligation to BB & T. BB & T initiated a foreclosure proceeding in state court, a hearing was held pursuant to North Carolina foreclosure law, and an order was entered giving BB & T permission to hold a foreclosure sale. *See,* N.C. GEN.STAT. § 45–21.16 to § 45–21.17. The foreclosure sale was held on December 28, 1995, and the debtors filed their chapter

13 petition five days later, on January 2, 1996, during the statutory upset bid period prescribed by North Carolina law. N.C. GEN.STAT. § 45–21.27. The debtors now want to cure their mortgage default and maintain their regular mortgage payments through their chapter 13 plan pursuant to 11 U.S.C. § 1322(b)(5). BB & T contends that the debtors lost these rights when the foreclosure sale was held and that it is entitled to relief from the automatic stay.

█ The Bankruptcy Code provides that chapter 13 debtors may modify the rights of secured creditors, but not of a creditor "secured only by a security interest in real property that is the debtor's principal residence[.]" 11 U.S.C. § 1322(b)(2). However, § 1322(b)(5) further provides that "notwithstanding" § 1322(b)(2), chapter 13 debtors may cure a default and maintain payments during the bankruptcy case of a debt on which the last payment is due after the final plan payment. 11 U.S.C. § 1322(b)(5). Prior to the 1994 amendments, the Bankruptcy Code gave no guidance as to *when* the right to cure a mortgage default that is granted under § 1322(b)(5) terminates, and the cases on this subject were conflicting.

In *In re DiCello*, 80 B.R. 769 (Bankr. E.D.N.C.1987), this court held that expiration of the right to cure a mortgage default under § 1322(b)(5) occurs in North Carolina when the foreclosure sale is held because that is the time at which the mortgagor's rights were altered. *DiCello* reasoned that after a foreclosure sale a mortgagor could still redeem the property by paying the entire indebtedness, but a mortgagor could not cure a mortgage default because following a foreclosure sale there is no longer any default to cure.

*DiCello* was decided in the absence of any guidance from Congress as to the point during the foreclosure process when the right to cure a mortgage expires. The amendments made to the Bankruptcy Code in 1994 added subsection (c) to § 1322, which now provides

some direction. 11 U.S.C. § 1322(c) provides in applicable part that:

> (c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—
>
> (1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law[.]

11 U.S.C. § 1322(c)(1).

BB & T argues that the language of § 1322(c) is clear, the date the foreclosure sale is conducted determines when the debtors' right to cure ends. According to BB & T the foreclosure sale of the Barham's residence was completed prepetition, the debtors are no longer entitled to cure their mortgage default, and BB & T is entitled to relief from the automatic stay. Conversely, the debtors maintain that their right to cure does not terminate until the sale is completed and that their residence has not been "sold at a foreclosure sale" for the purposes of § 1322(c)(1) until the expiration of the ten day upset bid period provided by North Carolina law. In the court's opinion, a property is not "sold at foreclosure sale" in North Carolina until the termination of the upset bid period.

The legislative history to § 301 of the Bankruptcy Reform Act of 1994, which created 11 U.S.C. § 1322(c), states that § 1322(c)(1) was intended to overrule *In re Roach,* 824 F.2d 1370 (3d Cir.1987), which held that the debtor's right to cure ended when the foreclosure judgment was entered, prior to the foreclosure sale. H.R.REP. No. 103–835, 103d Cong., 2d Sess., 52 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3361. The legislative history further states that the substance of § 1322(c)(1) was designed to "safeguard[ ] a debtor's rights in a chapter 13 case by allowing the debtor to cure home mortgage defaults *at least through completion of a foreclosure sale* under applicable nonbankruptcy law."[1] *Id.* (emphasis added).

---

**1.** Floor statements are somewhat less reliable than actual congressional reports, however, the comment of Senator Grassley might favor interpreting the time of sale for § 1322(c)(1) as the time of the auction, although the context makes

his intent unclear. ("There may be several months between the court order and the foreclosure sale. Section 301 [now § 1322(c)] will preempt conflicting State laws, and permit homeowners to present a plan to pay off their

Section 1322(c)(1) specifies that cure rights end when a debtor's residence "is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law[.]" 11 U.S.C. § 1322(c)(1). Consequently, keeping the legislative history in mind, the court must examine North Carolina foreclosure law to determine the time now specified by the Bankruptcy Code for the termination of cure rights on debtors' residences.

North Carolina has established an upset bid procedure whereby any person may purchase real property after a foreclosure sale by bidding a minimum of 10% more than the sale price or the last upset bid, complying with the statutory procedures, and making the bid prior to the close of business on the tenth day after the sale or last upset bid. N.C. GEN.STAT. § 45–21.27 (Supp.1995). Furthermore, North Carolina General Statute § 45–21.29A states that "[i]f an upset bid is not filed following a sale, resale, or prior upset bid within the [ten day] period specified ... the rights of the parties to the sale or resale become fixed." N.C. GEN.STAT. § 45–21.29A (Supp.1995).

Indeed, North Carolina cases interpreting the foreclosure statutes have stated that the final and highest bidder at a foreclosure sale is merely a "proposed purchaser" who has no rights, or entirely voidable rights, to the property until the upset bid period terminates. *Cherry v. Gilliam*, 195 N.C. 233, 141 S.E. 594 (1928). Another case held that a foreclosure sale "cannot be consummated" until the expiration of the upset bid period. *Shelby Bldg. & Loan Ass'n v. Black*, 215 N.C. 400, 2 S.E.2d 6 (1939).

■ The court therefore concludes that pursuant to 11 U.S.C. § 1322(c)(1), a property is "sold" at a foreclosure sale only when the foreclosure sale is "completed." And in North Carolina, a foreclosure sale is not completed at the auction, but rather only after the expiration of the ten day upset bid period. Only at the end of the upset bid period does the purchaser's rights to the property become "fixed." Consequently, in North Carolina, a property has not been "sold at foreclosure sale" under 11 U.S.C. § 1322(c)(1) until all of the state procedural requirements for completion of the sale, including the expiration of the upset bid period, have been met.

Additionally, in 1993, North Carolina General Statute § 45–21.22 was amended to include a provision that if a bankruptcy petition is filed (1) after the notice and hearing provided for in § 45–21.16 has been completed and (2) after the Clerk of Superior Court has authorized the foreclosure and (3) prior to the expiration of the upset bid period, then if the automatic stay of 11 U.S.C. § 362 is subsequently lifted with respect to the foreclosure, the foreclosing trustee need not comply with the notice and hearing procedure again, but may proceed to readvertise the property and sell it. N.C. GEN.STAT. § 45–21.22(c) (Supp.1995). The effect of this new statutory provision with respect to the validity of an initial foreclosure sale is not clear, but the statute is another indication that a property is not deemed sold until the upset bid period has expired.

■ In reaching its decision today, the court is cognizant of the possibility that a mortgagor's rights may be altered by a foreclosure sale under North Carolina law, but 11 U.S.C. § 1322(c) says that the time limit on a chapter 13 debtor's ability to cure a mortgage default is to be determined "notwithstanding ... applicable nonbankruptcy law." Since the restriction on a chapter 13 debtor's ability to cure is now determined only by when the foreclosure sale is completed, and not when the parties' rights are altered, *DiCello* should not apply to chapter 13 cases [2] commenced after the October 22, 1994 enactment of the Bankruptcy Reform Act of 1994. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 702, 108 Stat. 4106, 4150 (1994). A mortgagor who files a chapter 13 petition during the upset bid period may now, by virtue of § 1322(c)(1), cure the mortgage default under either § 1322(b)(3) or § 1322(b)(5).

---

mortgage debt *until the foreclosure sale actually occurs*.") 140 CONG.REC. S14462 (daily ed. Oct. 6, 1994) (statement of Sen. Grassley) (emphasis added).

2. The court expresses no opinion regarding the application of *DiCello* in chapter 11 cases.

Accordingly, the Barhams still have the right to cure mortgage arrearages pursuant to §§ 1322(c) and 1322(b)(3) or (b)(5), and BB & T's motion for relief from the automatic stay is **DENIED**.

**SO ORDERED.**