**In re Mutamba and Viola ZIYAMBE, Debtors.**

**Bankruptcy No. 96–21395.**

United States Bankruptcy Court, D. New Jersey.

Sept. 13, 1996.

Robert Taylor, East Orange, New Jersey, for Debtors Mutamba Ziyambe and Viola Ziyambe.

Schwall & Becker by Mary Lynn McCaffrey, Hillsdale, New Jersey, for Citibank, N.A.

## OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

This matter comes before the Court upon motion of Citibank, N.A. ("Citibank"), a secured creditor, to annul the automatic stay pursuant to 11 U.S.C. § 362(d), to validate the foreclosure sale of the debtors' residence, and granting prospective relief barring the debtors from filing another bankruptcy peti-

tion for 180 days or ordering that the automatic stay of any future bankruptcy petition will not be imposed against Citibank as to the debtors' residence.

## FACTS

On or about October 6, 1987, the debtors, Mutamba Ziyambe and Viola Ziyambe, purchased real property located at 180 Parker Avenue, Maplewood, New Jersey ("the Property") which they used as their primary residence. The debtors executed a Note in the principal amount of $143,000 in favor of Gateway Mortgage Corporation, which was secured by a Mortgage on the premises. The Mortgage was recorded in the Office of the Register of Essex County on October 9, 1987, in Mortgage Book 5494 at page 533. The Mortgage was assigned to Citibank by Assignment of Mortgage recorded in the Office of the Register of Essex County on October 9, 1987 in the Assignment of Mortgage Book 595 at page 837. The debtors subsequently defaulted on the mortgage, Citibank commenced a foreclosure action, and a final judgment in foreclosure was entered on July 31, 1995. The Essex County Sheriff conducted a foreclosure sale of the Property on February 20, 1996 at which time Citibank bid its interest in the Property. The debtors filed the within Chapter 13 bankruptcy petition the following day, on February 21, 1996. No sheriff's deed was issued to Citibank prior to the Debtors' Chapter 13 filing.

The Debtors seek to invoke the provisions of Section 1322 of the Code to reinstate the mortgage, decelerate the mortgage payments and cure all defaults in the mortgage which was foreclosed upon. The Debtors have proposed a plan wherein the Debtor seeks to cure, under § 1322 of the Code, all mortgage arrearages over a period of sixty (60) months. As of April 21, 1996, which is sixty (60) days after the Debtors had filed their Chapter 13 petition, the debtors had not exercised their state law redemption rights with respect to the Property.

The issue presented by this case is whether the debtors, who have filed a Chapter 13 petition within 10 days following the foreclosure sale of real property used as their principal residence may, more than sixty days after the filing of the debtors' Chapter 13 petition, reinstate the mortgage, decelerate the mortgage indebtedness, and cure the default by resuming payments according to the provisions of a Chapter 13 plan.

A hearing was conducted on July 19, 1996 at which time the Court reserved decision. This Opinion constitutes this Court's Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

## DISCUSSION

### I. SECTION 1322 OF THE BANKRUPTCY CODE

The relevant section to this Court's analysis is Section 1322 of the Bankruptcy Code, as amended by the Bankruptcy Reform Act. The amendment to section 1322 applies to cases filed after October 22, 1994. Because the Debtors' petition was filed on February 21, 1996, the amended Section 1322 is applicable to this case.

The relevant provisions of amended Section 1322 provide:

(b) Subject to subsections (a) and (c) of this section, the plan may—

\*       \*       \*       \*       \*       \*

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default;

\*       \*       \*       \*       \*       \*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim in which the last payment is due after the date on which the final payment under the plan is due;

\*       \*       \*       \*       \*       \*

(c) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law—

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) *until such residence is sold at a foreclosure sale* that is conducted in accordance with applicable nonbankruptcy law; . . . .

11 U.S.C. § 1322 (1994) (emphasis added).

As explained in the legislative history of the Bankruptcy Reform Act of 1994, section 1322(c) effectively overruled the Third Circuit's decisions in *Matter of Roach,* 824 F.2d 1370 (3d Cir.1987) and *First National Fidelity Corp. v. Perry,* 945 F.2d 61 (3d Cir.1991). H.R.Rep. No. 835, 103rd Cong., 2d Sess. 52 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3360–61. Specifically, the legislative history provides:

> Section 1322(b)(3) and (5) of the Bankruptcy Code permit a debtor to cure defaults in connection with a chapter 13 plan, including defaults on a home mortgage loan. Until the Third Circuit's decision in *Matter of Roach,* 824 F.2d 1370 (3d Cir. 1987), all of the Federal Circuit Courts of Appeal had held that such right continues at least up until the time of the foreclosure sale. See *In re Glenn,* 760 F.2d 1428 (6th Cir.1985), cert. denied, 474 U.S. 849 [106 S.Ct. 144, 88 L.Ed.2d 119] (1985); *Matter of Clark,* 738 F.2d 869 (7th Cir.1984). The *Roach* case, however, held that the debtor's right to cure was extinguished at the time of the foreclosure judgment, which occurs in advance of the foreclosure sale. This decision is in conflict with the fundamental bankruptcy principle allowing the debtor a fresh start through bankruptcy.
>
> *This section of the bill safeguards a debtor's rights in a chapter 13 case by allowing the debtor to cure home mortgage defaults at least through completion of a foreclosure sale under applicable nonbankruptcy law. However, if the State provides the debtor more extensive "cure" rights (through, for example, some later redemption period), the debtor would continue to enjoy such rights in bankruptcy.* The changes made by this section, in conjunction with those made in section 305 of this bill, would also overrule the result in

*First National Fidelity Corp. v. Perry,* 945 F.2d 61 (3d Cir.1991) with respect to mortgages on which the last payment on the original payment schedule is due before the date on which the final payment under the plan is due. In that case, the Third Circuit held that subsequent to foreclosure judgment, a chapter 13 debtor cannot provide for a mortgage debt by paying the full amount of the allowed secured claim in accordance with Bankruptcy Code section 1325(a)(5), because doing so would constitute an impermissible modification of the mortgage holder's right to immediate payment under section 1322(b)(2) of the Bankruptcy Code.

*Id.* (emphasis added).

In interpreting the above legislative history, this Court must address two issues:

(1) the meaning of section 1322(c)(1)'s phrase "until such residence is sold at a foreclosure sale"; and

(2) whether New Jersey "provides the debtor more extensive 'cure' rights (through, for example, some later redemption period)," and if so, what are those rights that "the debtor would continue to enjoy . . . in bankruptcy."

The Court notes that the issue presently before this Court was recently addressed by two bankruptcy courts in the District of New Jersey. *See In re Ross,* 191 B.R. 615 (Bankr.D.N.J.1996) (Wizmur, J.) and *In re Macavia,* No. 95–34118 (Bankr.D.N.J. date decided October 19, 1995) (Ferguson, J.) (unpublished opinion). The *Ross* and *Macavia* courts held that a New Jersey homeowner may under Section 1322(c)(1) provide in his or her Chapter 13 plan for cure of any defaults and reinstatement of the mortgage on his primary residence following the entry of a foreclosure judgment and conduct of a sheriff's sale until the actual delivery of the sheriff's deed to the successful purchaser. *See In re Ross,* 191 B.R. at 621 ("We conclude that a New Jersey foreclosure sale is complete when the sheriff delivers the deed to the successful purchaser. Therefore, in New Jersey, under § 1322(c)(1), a Chapter 13 debtor may cure a default and reinstate a residential mortgage following the entry of a foreclosure judgment and the conduct of a

sheriff's sale, until the actual delivery of a sheriff's deed to the successful purchaser.") *See In re Macavia, id.* at 5 ("[A]t the time of the filing the Debtors retained an interest in the property in that the deed had not been delivered under New Jersey law the equity of redemption was not extinguished. Section 1322(c)(1) allows a debtor to cure until the foreclosure sale is complete. Since the sale is not complete until the delivery of the deed and the Debtors filed before delivery, they retain their right to cure the default through their Chapter 13 plan.").

For the reasons set forth herein, this Court respectfully declines to follow the respective holdings of *Ross* and *Macavia.* Rather, this Court for the reasons set forth below holds that the termination date of the right to cure a default through a Chapter 13 plan under § 1322(c)(1) is the date of the sheriff sale of the mortgaged property. While the debtors retained their state law right of redemption after filing their Chapter 13 petition within 10 days following the sale, they cannot extend that right of redemption under a Chapter 13 plan that is filed after a foreclosure sale beyond the 10 day state law redemption period as extended an additional 60 days by operation of 11 U.S.C. § 108(b). *In re Roach,* 824 F.2d at 1372, n. 1.

A. *The Meaning of the Phrase "Until Such Residence is Sold at a Foreclosure Sale" Under 11 U.S.C. § 1322(c)(1).*

■■■ State law determines the existence and extent of the right of redemption after sale, or at any other point in the foreclosure action. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). *See also Union Cty. Savings Bank v. Johnson,* 210 N.J.Super. 589, 595, 510 A.2d 288 (Ch.Div.1986). Accordingly, this Court must first turn to New Jersey law to determine when, under New Jersey law, the property is deemed "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." This provision may be deemed ambiguous in light of the distinction under New Jersey between equitable title and legal title to property. Legal title to real property is conveyed to the mortgag-

ee upon execution of a mortgage, but is subject to defeasance through performance of the condition subsequent, payment of the mortgage debt. If the mortgagor fails to pay the mortgage debt in accordance with the terms of the mortgage, legal title vests in mortgagee and the mortgagee may institute foreclosure proceedings. The mortgagor may bring an equitable action to redeem the property, which gives the mortgagor the right to pay the mortgage indebtedness, costs of foreclosure and costs of sale and thereby recover full legal ownership of the property. *Lobsenz v. Micucci Holdings, Inc.,* 127 N.J.Super. 50, 51, 316 A.2d 59 (App. Div.1974); 30 *New Jersey Practice, Law of Mortgages* § 181, at 2 (Roger A. Cunningham & Saul Tischler) (1975).

■■■ As explained in *Union Cty. Savings Bank v. Johnson,* 210 N.J.Super. 589, 510 A.2d 288 (Ch.Div.1986), a purchaser gains equitable title to premises that are the subject of a foreclosure sale once the purchaser successfully bids on the property, however, the purchaser does not vest with legal title until the delivery of the deed. 210 N.J.Super. at 594, 510 A.2d 288. Therefore, one may contend that property is not actually "sold at a foreclosure sale" under New Jersey's property laws until the buyer gains legal title which may be weeks after the foreclosure sale.

Although the *Ross* and *Macavia* courts followed this reasoning, this Court finds that both the plain meaning of section 1322(c) and its legislative history as well as New Jersey law support a ruling that the day of the foreclosure sale when the property is successfully bid upon terminates the debtor's ability to cure defaults under a Chapter 13 plan.

B. *Does New Jersey "provide[] the debtor more extensive 'cure' rights (through, for example, some later redemption period)?"*

■■■ The legislative history accompanying the amended version of Section 1322 suggests that the debtor should be given the maximum permissible time in which to redeem the property. Thus, if state law permits an extended redemption period, the

debtor should be entitled to exercise his redemption right for the duration of that extended period. The Court now turns to the question of whether New Jersey affords the debtor the right to redeem the property beyond the 10 day state law redemption period as extended an additional 60 days by operation of 11 U.S.C. § 108(b).

Under New Jersey law, the right of redemption arises by statute, N.J.S.A. 2A:5(a)(16) *et seq.*, by rule, Rule 4:65–5, 6 and by equity. *See generally In re Mocco,* 176 B.R. 335, 344 (Bankr.D.N.J.1995) (Gindin, C.J.). New Jersey law provides an equitable right of redemption to a mortgagor. *Hardyston Nat'l Bank v. Tartamella,* 56 N.J. 508, 513, 267 A.2d 495, 497 (1970). In conjunction with this equitable right, New Jersey has established certain rules governing foreclosure sales, specifically R. 4:65–5 which provide that:

> A sheriff who is authorized or ordered to sell real estate shall deliver a good and sufficient conveyance in pursuance of the sale unless a motion for the hearing of an objection to the sale is served within 10 days after the sale or at any time thereafter before the delivery of the conveyance. Notice of motion shall be given to all persons in interest.

New Jersey Court Rule 4:65–5. The New Jersey Supreme Court has held that a mortgagor may exercise the right of redemption "within the ten-day period fixed by R. 4:65–5 for objection to the sale and until an order confirming the sale if objections are filed under the rule." *Hardyston,* 56 N.J. at 513, 267 A.2d at 497; *see also East Jersey Sav. & Loan Ass'n v. Shatto,* 226 N.J.Super. 473, 481–82, 544 A.2d 899, 903 (Ch.Div.1987) (clarifying the rule in *Hardyston,* stating that upon filing an objection to a foreclosure sale, no further redemption or tender of the same may be made until the motion is decided favorably to the objector so that a mortgagor cannot take advantage of a period of time between the motion and the ultimate decision thereby extending the time for redemption never contemplated by the rule, substantive

law or policy expressed in *Hardyston* ). In *Hardyston,* the court held that a mortgagor is entitled to redeem the property within the ten-day statutory period for objections to foreclosure sale and until an order confirming sale if objections are filed. 56 N.J. at 513–14, 267 A.2d 495.

Under New Jersey law, a Chapter 13 filing does not alone operate as an "objection" to the sale under Rule 4:65–5. *Union County Sav. Bank v. Johnson,* 210 N.J.Super. 589, 594, 510 A.2d 288 (Ch.Div.1986). In *Union County Sav. Bank v. Johnson,* the court held that, because the former mortgagor failed to object to the sale within the ten day period provided by Rule 4:65–5, the mortgagor lost her right of redemption and the filing of a Chapter 13 petition could not revive that redemption right. 210 N.J.Super. at 594, 510 A.2d 288 (quoting *Penn Fed. Sav. & Loan Ass'n v. Joyce,* 75 N.J.Super. 275, 282–83, 183 A.2d 114 (App.Div.1962), for the proposition that "the mortgagor has no right, as a matter of course, to redeem mortgaged premises after foreclosure sale and prior to the delivery of the sheriff's deed to a successful bidder"). As the *Union County* court explained, unless objection to the sale is filed in accordance with the New Jersey Court Rules, equitable title to the property is indefeasibly vested in the successful bidder and may not subsequently be overturned by the former mortgagor's attempts to redeem the property. 210 N.J.Super. at 594, 510 A.2d 288.

More recently, the New Jersey Supreme Court implicitly recognized that, subject to objection, the mortgagor's statutory right of redemption would be terminated once three events took place: (1) an action to foreclose the mortgage was instituted pursuant to N.J.S.A. § 2A:50–2; (2) a writ of execution for sale of the premises is obtained pursuant to N.J.S.A. § 2A:50–36; and (3) sale of the property at foreclosure pursuant to N.J.S.A. § 2A:50–37.[1] *Chase Manhattan Bank v. Josephson,* 135 N.J. 209, 218, 638 A.2d 1301,

---

1. As noted by the *Ross* court: "New Jersey foreclosure law has recently been amended effective December 4, 1995, with minimal impact on the issues raised herein. *See* 'Fair Foreclosure Act',

N.J.S.A. 2A:50–53 *et seq.* (1995). We note that N.J.S.A. § 2A:50–64 allows the sheriff two weeks to deliver the deed after sale." 191 B.R. at 619, n. 9.

*appeal dismissed,* 136 N.J. 292, 642 A.2d 1002 (1994).

■ The case of *McEwen v. Federal Nat'l Mortgage Ass'n,* 194 B.R. 594 (N.D.Ill.1996), is distinguishable from the case presently before this Court on several grounds. The most obvious distinction between *McEwen* and this case is that *McEwen* interprets the law of Illinois rather than the law of New Jersey. In *McEwen,* the debtors filed their Chapter 13 plan after the judicial sale of their residence and before the sale had been confirmed by the state court. The *McEwen* court held that Section 1322(c)(1) permitted the debtors the opportunity to cure defaults with respect to a residential mortgage, finding that a foreclosure sale is not conducted under Illinois law until the judicial sale has been confirmed by the court. *Id.* at 596. The Illinois foreclosure process is notably different than that of New Jersey. A foreclosure sale under Illinois law does not occur until it is confirmed by the court. *Id.* at 596 (citing *In re Rosewell,* 236 Ill.App.3d 473, 177 Ill.Dec. 683, 603 N.E.2d 753 (1992)). The highest bid received by a sheriff at a judicial sale conducted under Illinois law is merely an irrevocable offer to purchase the property and acceptance of the offer takes place only when the court confirms the sale. *Id.* (citing *Straus v. Anderson,* 366 Ill. 426, 9 N.E.2d 205 (1937)). Under New Jersey law, however, title to the property is indefeasibly vested in the successful bidder unless objection to the sale is filed within ten days. *Union County,* 210 N.J.Super. at 594, 510 A.2d 288. In addition, under Illinois law, confirmation of sale is not "simply a ministerial act to be routinely performed by the state court." *Id.* at 596, 510 A.2d 288. Under New Jersey foreclosure law, delivery of the deed by the sheriff is a ministerial act, routinely performed, which does not affect the redemption rights of the parties. *See, e.g. Porreca v. LaFerriere,* 225 N.J.Super. 590, 591, 543 A.2d 102 (App.Div.1988); *Bankers' Trust Co. v. Maxson,* 100 N.J.Eq. 1, 12, 134 A. 875 (Ch.Div.1926).

■ Similarly, the case of *In re Barham,* 193 B.R. 229 (Bankr.E.D.N.C.1996) is distinguishable from the case at bar. In *Barham,* the debtors filed a Chapter 13 petition after foreclosure sale but before the expiration of a statutory upset bid period prescribed by North Carolina law. The *Barham* court held that a foreclosure sale conducted in accordance with North Carolina law is not complete until the expiration of a statutory upset bid period. The final and highest bidder at a foreclosure sale under North Carolina law is merely a "proposed purchaser" who has no rights, or entirely voidable rights, to the property until the upset bid period expires. *Id.* at 232 (citing *Cherry v. Gilliam,* 195 N.C. 233, 141 S.E. 594 (1928)). Under North Carolina law, any person may purchase real property after a foreclosure sale by bidding at least 10 percent more than the sale price or the last upset bid, and making the upset bid prior to the close of business on the tenth day after sale or the last upset bid. *Id.* New Jersey law, however, does not permit further bidding after the date of the foreclosure sale. Once a foreclosure sale is conducted in accordance with New Jersey law, the debtor maintains only the right to redeem the property by paying the mortgage indebtedness, costs of foreclosure and costs of sale. *Lobsenz v. Micucci Holdings, Inc.,* 127 N.J.Super. 50, 51, 316 A.2d 59 (App.Div. 1974); 30 *New Jersey Practice, Law of Mortgages* § 183, at 7 (Roger A. Cunningham & Saul Tischler) (1975). Accordingly, this Court holds that in New Jersey, a Chapter 13 debtor may cure a default and reinstate a residential mortgage following the entry of a foreclosure judgment but only prior to the conduct of a sheriff sale, notwithstanding the fact that the actual delivery of the sheriff's deed to the successful purchaser has not been accomplished before the bankruptcy filing. To the extent applicable, the debtor would retain his or her state law redemption rights existing at the time of the bankruptcy filing extended by operation of § 108(b) for a period of 60 days.

■ The debtors here failed to exercise their right of redemption within ten (10) days of the sheriff sale. However, the debtors did file a Chapter 13 petition within the 10 day period in which they were permitted to redeem the property under state law. Such filing did not constitute an effective objection to the sale. *See Union County Sav. Bank v.*

*Johnson,* supra, 210 N.J.Super. at 594, 510 A.2d 288.

The provisions of Section 108 of the Bankruptcy Code provide in relevant part, however, that:

> (b) Except as provided in subsection (a) of this section, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under Section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of—
>
> > (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> >
> > (2) 60 days after the order for relief.

11 U.S.C. § 108(b). Consequently, the debtors' state law right of redemption, to the extent that it exists when a bankruptcy petition is filed, is extended for 60 days beyond the commencement of the bankruptcy proceeding by operation of Section 108 of the Bankruptcy Code. *See, e.g., Matter of Roach,* 824 F.2d 1370, 1372 n. 1 (3d Cir.1987) (11 U.S.C. § 108 extends the state law right of redemption); *In re Brown,* 73 B.R. 306, 309 (Bankr.D.N.J.1987).

In the case at bar, the debtors filed their petition on February 21, 1996. The state law redemption period expired on March 1, 1996. However, because Section 108(b) of the Code applies, the debtors had until April 21, 1996 to redeem their residence. Such redemption is accomplished by the payment in full of the mortgage indebtedness, costs of foreclosure and costs of sale. *Lobsenz v. Micucci Holdings, Inc.,* 127 N.J.Super. 50, 51, 316 A.2d 59 (App.Div. 1974); 30 *New Jersey Practice, Law of Mortgages* § 183, at 7 (Roger A. Cunningham & Saul Tischler) (1975). The debtors failed to do so and accordingly they have lost all title, right and interest in that property. The property is not property of the estate, and the debtors, therefore, may not propose to cure arrearages in their Chapter 13 plan. Accordingly, "cause" exists under § 362 to grant relief from the automatic stay to allow the Essex County Sheriff to deliver the deed to the successful bidder in this case.

## II. CONSISTENCY WITH LEGISLATIVE HISTORY OF 11 U.S.C. § 1322

The holding of this Court that the debtors in this case, having filed their petition within 10 days after the foreclosure sale, had no statutory right to cure defaults and reinstate their residential mortgage under § 1322 and had ten days following the date of the foreclosure sale plus an additional 60 day period by operation of § 108(b) to redeem the property under applicable state law is supported by the legislative history of the amended Section 1322(c). The legislative history to Section 1322 notes that Section 1322(b)(3) and (5) of the Bankruptcy Code permit a debtor to cure defaults in connection with a Chapter 13 plan, including defaults on home mortgage loans. The legislative history further explained that the amendment overturned the *Roach* decision and that "all of the Federal Circuit Courts of Appeal had held that such right (to cure defaults) continues at least up until the time of the foreclosure sale." After this statement in the legislative history, there is cited the cases *In re Glenn,* 760 F.2d 1428 (6th Cir.1985), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985), and *Matter of Clark,* 738 F.2d 869 (7th Cir.1984). In *Glenn,* the Sixth Circuit, reviewing cases involving Ohio and Michigan law, stated:

> The event we choose as the cut-off date of the statutory right to cure defaults is the sale of the mortgaged premises. We pick this in preference to a number of other potential points in the progress of events ranging from the date of first default to the day the redemption period expires following sale.

760 F.2d at 1435. Similarly, in *Clark,* the Seventh Circuit held, in interpreting Wisconsin law, that a debtor may cure defaults after a foreclosure judgment but prior to foreclosure sale. 738 F.2d at 871.

In *In re Sims,* 185 B.R. 853 (Bankr. N.D.Ala.1995), the bankruptcy court interpreted Section 1322(c)(1) as adopting the date of the foreclosure sale as the termination date of the debtor's right to cure arrearages on the mortgage. The *Sims* Court held that the debtor lost the ability to reinstate the mortgage, decelerate the indebtedness and resume payments according to the mortgage contract's pre-default terms under § 1322(b). The *Sims* Court explained that, as a matter of statutory construction, legislative history will not be considered unless the language of the statute is ambiguous. *Id.* at 863–64 (citing *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 240–41, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989)). The *Sims* Court found that the phrase "until such residence is sold at a foreclosure sale" was clear and unambiguous. *Id.* at 864. The *Sims* Court, therefore, did not address any conflict between the statutory language of Section 1322 and that section's legislative history. In *Sims,* the bankruptcy court turned to state law to determine when the property is deemed "sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law", *Id.* at 865–866, but noted that § 1322(c)(1) abrogated the need of courts to analyze the state property rights of the Debtor in the property to determine whether a cure is available. *Id.* at 866. The *Sims* court concluded that after foreclosure sale, the only way the debtor could "cure" the default was to exercise the statutory right of redemption through a lump sum payment which includes the principal, interest and certain other charges as mandated by Alabama state law. *Id.* at 866–867. *See also In re Jaar,* 186 B.R. 148 (Bankr. M.D.Fla.1995) (applying Florida law, holding mortgagor could no longer cure default and reinstate mortgage under § 1322(c)(1) where certificate of sale is filed by the clerk in the state court before the filing of the Chapter 13 petition); *In re Smith,* 85 F.3d 1555, 1561 and fn. 3 (11th Cir.1996) (applying pre-Reform Act § 1322(b) and Alabama law, holding that debtor could no longer cure default and reinstate mortgage under Chapter 13 plan following foreclosure sale and opining that result would be the same under new Section 1322(c)(1)).

The *Sims* court, in finding that the Reform Act had, in effect, codified cases which had adopted a "bright line" test to cut off the right to cure, noted:

In *Grubbs v. Houston First Am. Savs. Ass'n,* 730 F.2d 236, 241–42 n. 9 (5th Cir. 1984), the court stated:

To permit for Chapter 13 purposes, the variations of the laws of different states to govern the effect of an acceleration and its curability would be to defeat one of Congress' important purposes in exercising its preemptive bankruptcy powers under the federal Constitution, to provide by Chapter 13 a uniform national remedy by which to adjust debts of individuals with regular incomes as an alternative to their being forced to undergo liquidating bankruptcy. Along with [the Second Circuit Court of Appeals] "we do not believe that Congress labored for five years over this controversial question only to remit consumer debtors—intended to be the primary beneficiaries of the new Code—to harsher mercies of state law."

This Court believes that bankruptcy equity policies and state law interests are both served by recognizing the foreclosure sale as the end point of the cure and reinstatement rights of debtors. All Alabama debtors, by the time of a foreclosure sale, have had ample opportunity to avail themselves of the protection of Chapter 13.

*Sims,* 185 B.R. at 863 (quoting *In re McKinney,* 174 B.R. 330, 336 (Bankr.S.D.Ala.1994)); accord *In re Glenn,* 760 F.2d 1428, 1435 (6th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 144, 88 L.Ed.2d 119 (1985).

The comments of Senator Grassley also supports this Court's finding that Congress intended that the Property would be deemed "sold" under § 1322(c)(1) at the time of the foreclosure sale:

There may be several months between the court order and the foreclosure sale. Section 301 [now § 1322(c) ] will preempt conflicting State laws; and permit homeowners to prevent a plan to pay off their mortgage debt until the foreclosure sale actually occurs.

140 CONG.REC. S14462 (daily ed. Oct. 6, 1994) (floor statement of Sen. Grassley).

This Court does not believe that Congress intended to introduce such inherent uncertainty into the foreclosure process by permitting the determination as to whether a property is "sold" under New Jersey law to vary from county to county, and even within the same county, depending upon the staffing considerations in the county sheriff's office. In short, a homeowner's rights in one New Jersey county would often differ from the rights of homeowners in another New Jersey county, based solely upon administrative concerns.

This ruling is also consistent with New Jersey state law. A sheriff is merely a conduit for the delivery of a deed; the sheriff performs a ministerial function which does not affect the substantive rights of the parties under state law. *In re Ross*, 191 B.R. at 621; *Porreca v. LaFerriere*, 225 N.J.Super. 590, 591, 543 A.2d 102 (App.Div.1988) (a sheriff performs a ministerial function when he transfers a deed for recording and therefore is not liable for attendant realty transfer fee); *Bankers' Trust Co. v. Maxson*, 100 N.J.Eq. 1, 12, 134 A. 875 (Ch.Div.1926). There are 21 separate counties in the State of New Jersey, each of which has its own processes for delivery of deeds. Certainly Congress when it enacted Section 1322 of the Code did not envision that the rights of homeowners to cure defaults under § 1322 would depend solely upon the county in which the debtor resides.

Furthermore, under a system whereby delivery of the sheriff's deed determines whether the property is "sold" under New Jersey law, a homeowner's rights differ from one month to the next based only upon the workload and staffing considerations of the sheriff's office during any given month. This Court finds that delivery of a sheriff's deed is not the proper deadline for fixing the debtor's rights in property. The date of delivery of a sheriff's deed is capricious; it cannot be predicted by the debtor in default, the creditor or the successful purchaser. For the reasons set forth herein, this Court finds that the date of the foreclosure sale when the property is successfully bid upon is when "such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law" within the meaning of Section 1322(c)(1) and so the deadline under § 1322 for curing defaults and the last date upon which a debtor may propose to cure arrearages of the mortgage under a Chapter 13 plan.

The Debtors argues herein that the Debtors have been making their payments to the Chapter 13 trustee and are current on this obligation, and that the payments to Citibank have been accepted by Citibank. Citibank concedes that one post-petition payment was made and credited to the March 1996 payment, but asserts that the Debtors are in arrears for payments due for the months of April through July 1996 in the sum of $6,599.68. The Debtors argue here that the doctrine of waiver is applicable to these facts.

Waiver is the "intentional relinquishment of a known right." *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 51 (3d Cir.1988). The Supreme Court has held that in order to find waiver of a statutory right, "the waiver must be clear and unmistakable." *Metropolitan Edison Co. v. NLRB*, 460 U.S. 693, 708, 103 S.Ct. 1467, 1477, 75 L.Ed.2d 387 (1983). There is no evidence in the record of any waiver, nor a "clear and unmistakable one," and accordingly the doctrine of waiver does not apply here. *See also Central Pennsylvania Teamsters Pension Fund*, 85 F.3d 1098, 1109 (3d Cir.1996); *Evcco Leasing Corp. v. Ace Trucking Co.*, 828 F.2d 188, 195 (3d Cir. 1987).

*CONCLUSION*

Considering all of the foregoing facts and circumstances, this Court holds that the foreclosed mortgage was not an interest which the debtor could have reinstated, decelerated and cured pursuant to 11 U.S.C. § 1322. While New Jersey law affords mortgagors equity of redemption, these redemption rights do not alter the fact that debtors have only up until prior to a foreclosure sale to cure defaults under a Chapter 13 plan even though they may have a longer period of

time under relevant state law in which to redeem the property. The period by which the debtors could have redeemed the property under New Jersey law as extended by Section 108(b) has also expired, and Section 1322 does not revive or expand the debtors' redemption rights. Accordingly, movant is granted relief from the automatic stay to allow the Essex County sheriff to issue a deed to Citibank, the successful bidder in this case.

Citibank has also requested prospective relief in the form of an order declaring that any future filing by the debtors herein or any other debtors shall not act to impose the automatic stay as against Citibank with respect to the Property unless the debtors upon application to this Court seek an order imposing the automatic stay. While courts may fix as an appropriate sanction for abusive filings prospective relief, including a prohibition against future filings, *see e.g., In re Walker*, 102 B.R. 612, 616 (Bankr. N.D.Ohio 1989); *In re Abdul–Hasan*, 104 B.R. 263, 266 (Bankr.C.D.Cal.1989), the facts in this case do not warrant such relief beyond the relief from the stay provided in this Opinion.

An Order in accordance with this Opinion shall be submitted.